---

## THE MACY.

(Circuit Court of Appeals, Second Circuit. May 25, 1909.)

### No. 276.

NAVIGABLE WATERS (§ 24*)—OBSTRUCTION BY WRECK—LIABILITY OF OWNER FOR FAILURE TO MARK WRECK.

The owner of a canal boat which was sunk in the channel of the Hudson river, who failed for two days without good excuse to mark the place, as required by Act March 25, 1899, c. 425, § 15, 30 Stat. 1152 (U. S.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Comp. St. 1901, p. 3543), did not act within a reasonable time, and was liable for damage done to another vessel by collision with the wreck.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. § 66; Dec. Dig. § 24.*]

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree of the District Court in favor of the owners of the tug boat Hiawatha against the canal boat Macy for damages resulting from a collision.

Armstrong, Brown & Boland (Pierre M. Brown, of counsel), for appellant.

Wing, Putnam & Burlingham (Charles C. Burlingham, of counsel), for appellee Baxter.

J. A. Nelson, for appellees Egerton et al.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. On February 14, 1907, about 3 p. m., the tug Hiawatha was proceeding down the North River about 1,000 feet out from the Jersey shore in the vicinity of Ft. Lee, when she came into collision with the sunken canal boat Macy. The latter, through some mishap into which it is not necessary to inquire, sank, at about the place where the Hiawatha collided with her, on February 12th between 7:30 and 8 a. m. No part of her projecting above the surface gave notice of her presence, nor was her wreck marked by any buoy or beacon.

Act March 25, 1899, c. 425, § 15, 30 Stat. 1152 (U. S. Comp. St. 1901, p. 3543), provides as follows:

"Whenever a vessel, raft, or other craft is wrecked and sunk in a navigable channel, accidentally or otherwise, it shall be the duty of the owner of such sunken craft to immediately mark it with a buoy or beacon during the day, and a lighted lantern at night, and to maintain such marks until the sunken craft is removed or abandoned, and the neglect or failure of the said owner so to do shall be unlawful."

This statute was before us in The Anna M. Fahy, 153 Fed. 866, 83 C. C. A. 48, where it was held that the duty of marking the location of the wreck was placed by the statute upon the owner, and no one else, and that there is no divided responsibility. It was further held that when the owner of a sunken wreck has neglected to comply with the statute, and by reason of the absence of buoy, beacon, or mark of any kind, a vessel herself free from fault has sustained damages by a collision with the wreck, recovery therefor may be had against the offending vessel. We also held that the word "immediately," as used by the statute, means within a reasonable time, having in view the circumstances of the particular situation in hand.

It is apparent, therefore, that the decree against the Macy should be affirmed, unless some special circumstances require such a construction of the word "immediately" as would excuse her owner for his failure to mark her location for more than two days after she sank. It is contended that the river during this period was so obstructed

with ice that the wreck could not be located. The testimony does not support any such contention. Probably the conditions were such that nothing could be done in the way of raising the wreck, or even in beginning that operation; but the mere locating of the wreck is a different matter. The master of the tug Terry, which had the Macy in tow when she sank, took his bearings at the time, and, when asked afterwards, stated that she lay about 1,000 feet off the powder dock at Ft. Lee. She was eventually found between 900 and 1,000 feet off that dock, and, as the witness who found her says, "just where they told me she was from the office." Moreover, when the searchers reached there, they found that by some chance one of her fenders was floating above her; its line being still fast to the wreck. There is nothing to indicate that, if the owner had bestirred itself to get into communication with those on the tug who knew where she sank, and to employ some one to do what the statute required, it could not have complied with those requirements long before the Hiawatha struck the wreck.

The owner of the Macy also contends that it contracted with John F. Baxter (the Baxter Wrecking Company) to do this, and has brought the latter in under the fifty-ninth rule. As to what contract was made between them we have the evidence only of the two individuals who entered into it, Baxter and Hill, the president of the claimant. The latter says it was to "locate buoy and raise the wreck"; the former, that it was "to recover the boat." The conversation was through telephone. We are persuaded that Baxter's recollection as to the conversation is the correct one. It certainly is inherently more probable. No doubt, in order to recover the boat it would be necessary to locate her, and after she was located the usual course would be to mark her position for the guidance of the wrecking crews who might be sent to her. But that enterprise did not call for immediate action. We are not satisfied from the proof that it was agreed between the parties that, aside from recovery of the boat, Baxter agreed to carry out the special obligation, which the statute imposed upon the owner, of marking the position of the wreck by a buoy or beacon during the day and a lighted lantern at night, and maintaining such marks until the sunken craft might be removed.

The decree of this District Court is affirmed, with interest, and with costs to Baxter against the Macy.