## THE PLYMOUTH.

### THE LEHIGH & WILKESBARRE COAL CO. NO. 11.

#### (Circuit Court of Appeals, Second Circuit. June 22, 1915.)

#### Nos. 295, 296.

NAVIGABLE WATERS ⊚⟹24—OBSTRUCTION BY WRECK—DUTY OF OWNER TO WORK.

Res. March 2, 1868, No. 16, § 1, 15 Stat. 249 (Comp. St. 1913, § 8452), authorizes the Lighthouse Board, when in their judgment deemed necessary, to place a light vessel or other suitable warning over any wreck. Act March 3, 1899, c. 425, § 15, 30 Stat. 1152 (Comp. St. 1913, § 9920), requires the owner of any vessel wrecked in a navigable channel to mark it with a buoy or beacon during the day and a lantern at night until its removal. *Held*, that the owner of a vessel sunk in the Hudson river fully complied with the requirements of this statute by applying for and securing the services of the Lighthouse Department to mark the place of the wreck, and could not be held responsible for the result of misplacing a buoy by the Department, which it had no authority to move, even though it paid the Department for the service.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. § 66; Dec. Dig. ⊚⟹24.]

Appeals from the District Court of the United States for the Southern District of New York.

For opinion below, see 220 Fed. 348.

Haight, Sandford & Smith, of New York City (H. M. Hewitt and W. Parker Sedgwick, both of New York City, of counsel), for appellant.

J. T. Kilbreth, of New York City, for appellee Lehigh & Wilkesbarre Coal Co.

James J. Macklin, of New York City (De Lagnel Berier, of New York City, of counsel), for The Plymouth.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. June 6, 1913, the tug Plymouth, with a hawser tow of three coal-laden barges in one tier, was passing up the North River along the Red Hook anchorage grounds bound for Boston via Buttermilk channel in the East River and Long Island Sound. Her master, seeing a wreck buoy to the west and north of permanent buoy No. 14, undertook to pass between them. In doing so, barge No. 11, which was the port barge in the tier, ran over the bow of barge No. 22, which had been sunk on the morning of June 3d, while in tow of the tug Sachem, in a collision between that tug

and the steamer Eddie, and was lying across the stream. The Lehigh & Wilkesbarre Coal Company, owner of barge No. 11, filed a libel against the Hartford & New York Transportation Company, owner of barge No. 22, charging it with negligence in not properly marking the wreck. The Hartford Company filed a cross-libel for damages to the wreck, charging the Lehigh Company with negligence in towing barge No. 11 over it.

The proofs showed that the Hartford Company kept a tug by the wreck to warn navigators from the time of the collision until the afternoon, when the Lighthouse Department at its request, placed a gas burning buoy there. The Hartford Company did not abandon barge No. 22 and promptly raised her after the accident. The government made a charge to the company for buoying the wreck.

The District Judge found that the navigation of the Plymouth was not negligent, dismissed the libel of the Hartford Company, and held it liable to the cross-libelant for damages sustained by barge No. 11, on the ground that the buoy was placed so far to the westward of the vessel, which was lying in an easterly and westerly direction, as to mislead navigators as to its location. He treated the government as the agent of the Hartford Company, because it had requested the Lighthouse Department to buoy the wreck, and had paid the usual charge for so doing. We agree with him in everything, but this last conclusion.

The act of March 2, 1868 (15 Stat. 249), reads:

"That the Lighthouse Board be, and they are hereby authorized, when, in their judgment, it is deemed necessary, to place a light vessel, or other suitable warning of danger, on or over any wreck or temporary obstruction to the entrance of any harbor, or in the channel or fairway of any bay or sound."

Section 15 of the act of March 3, 1899 (30 Stat. 1152), reads:

"Sec. 15. That it shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft; or to voluntarily or carelessly sink, or permit or cause to be sunk, vessels or other craft in navigable channels; or to float loose timber and logs, or to float what is known as sack rafts of timber and logs in streams or channels actually navigated by steamboats in such manner as to obstruct, impede, or endanger navigation. And whenever a vessel, raft, or other craft is wrecked and sunk in a navigable channel, accidentally or otherwise, it shall be the duty of the owner of such sunken craft to immediately mark it with a buoy or beacon during the day and a lighted lantern at night, and to maintain such marks until the sunken craft is removed or abandoned, and the neglect or failure of the said owner so to do shall be unlawful; and it shall be the duty of the owner of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently, and failure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States as hereinafter provided for."

It is quite obvious that if the Lighthouse Department had marked this wreck of its own motion, as it might have done, the Hartford Company could not have moved the buoy or interfered with it in any way, whether it thought it properly placed or not, and if the Hartford Company had itself buoyed the wreck the Lighthouse Department in the exercise of its governmental authority could have changed

the location of the buoy or replaced it with another. We think the Hartford Company fully complied with the requirements of the act of 1899, when it secured the services of the Lighthouse Department. No wiser or safer course could be taken than to rely upon the resources and competency of the Lighthouse Department in such case. It makes no difference in our opinion that the government made a charge for its service. It was all the same acting, not as the private agent of the Hartford Company, but in its sovereign capacity under the act of 1868, as agent for the whole public. The Hartford Company could not have ordered the buoy to be withdrawn, or have changed its location, or have controlled the Lighthouse Department in any way as a principal may control his agent.

There is no American authority on the subject, but we think The Douglas, 7 Prob. Div. 151 (1882), exactly in point. Under the Removal of Wrecks Act of 1877, the harbor master of the port of London had authority like that conferred by the act of 1868 on the Lighthouse Board. The Douglas was sunk in a collision as the result of the negligence of her master, who instructed a tug to request the harbor master to take care of the wreck. The harbor master promised to do so, but neglected to place lights for several hours, within which time the Mary Nixon, without fault on her part, ran into the wreck and sustained damage. It was held by the Court of Appeals that the master and mate of the Douglas had a right to rely upon the harbor master's doing his duty, and that the owners of the wreck were in no way responsible for the accident. Counsel seeks to distinguish this case on the ground that, unlike our act of 1899, the Removals Act does not expressly require the owner of a wreck in navigable waters to buoy her. But without any statute the law lays this obligation upon every owner who does not abandon a wrecked vessel.

The decree is modified, with costs of this court to the Hartford & New York Transportation Company, and without costs of the District Court to either party.