SULLIVAN v. P. SANFORD ROSS, Inc.*

(Circuit Court of Appeals, Second Circuit. January 14, 1920.)

No. 86.

1. NAVIGABLE WATERS &⇒24—UNDER STATUTE REQUIRING MARKING OF WRECK, DUTY ARISES ONLY AFTER INFORMATION OF WRECK.

Act March 3, 1899, § 15 (Comp. St. § 9920), making it the duty of the owner of any craft sunk in a navigable channel to immediately mark the same with a buoy by day and a lighted lantern at night, and to maintain such marks until the wreck can be removed, under penalty of fine or imprisonment, is a criminal statute, and such duty does not arise until the owner receives information of the wreck.

2. NAVIGABLE WATERS &⇒24—PRESUMPTION OF NEGLIGENCE FROM UNMARKED WRECK NOT CONCLUSIVE.

Failure of owner of a sunken vessel to maintain a light over it at night, as required by Act March 3, 1899, § 15 (Comp. St. § 9920), raises a presumption of negligence in a civil suit for collision with such vessel at night in New York harbor, but the presumption is not conclusive.

3. NAVIGABLE WATERS &⇒24—FAILURE TO MAINTAIN LIGHT ON SUNKEN VESSEL.

Owner of a scow, which capsized and lay awash on Red Hook Flats, New York harbor, held not chargeable with negligence, which rendered it liable for a collision with the scow at night, because it failed to maintain a light thereon, where before night it placed a lighted lantern of approved pattern on the boat, fixed to a sufficient pole 5

&⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 252 U. S. ——, 40 Sup. Ct. 586, 64 L. Ed. ——.

feet above the water, but, presumably by the action of the waves during a gale in the night, the light was extinguished.

Ward, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Fred B. Sullivan against P. Sanford Ross, Incorporated. Decree for libelant, and respondent appeals. Reversed.

The corporation respondent owns a number of vessels and is largely engaged in harbor improvement work. It owned and maintained a "mooring scow" on the Red Hook Flats in the Upper Bay of New York. On February 4, 1917, this vessel capsized and lay awash, but not fast aground, constituting a menace to navigation. The act of March 3, 1899, § 15, 30 Stat. 1152 (Comp. St. § 9920), declares that when a vessel is "wrecked and sunk in a navigable channel * * * it shall be the duty of the owner of such sunken craft to immediately mark it with * * * a lighted lantern at night, and to maintain" the same until "the sunken craft is removed or abandoned, and the neglect or failure of the said owner so to do shall be unlawful." The act also provides punishment by indictment for its violation.

Respondent's superintendent, having "charge of the mud scows and tugs," was informed on the morning of February 5th, and by the master of respondent's tugboat, of this accident. He went to the scow, but until late in the afternoon of February 5th the weather was such that he could not approach the capsized craft with the tugboat. Later he took a smaller boat and dropped it back over the scows (the little boat being connected by a line to the tug), and a workman of respondent fastened a pole to the wreck and put a lantern thereon. This was "a regular Dietz lantern, the same as we use towing to sea with our mud scows"; it was such as used "for lights on scows towing to sea," and of the kind that is "used for anchor lights." In the opinion of the superintendent it was better than an ordinary anchor light, for (as he said) "if you put an ordinary anchor light where this was, it wouldn't stay lighted any longer." The lantern was fastened to the top of the pole, and with "rope yarn" the lantern side was also brought close to the pole.

After 4 p. m. of February 5th, and until midnight, the wind blew steadily and heavily from the northwest (maximum 58). Between midnight and dawn of February 6th the wind somewhat moderated, not rising above a maximum of 37 miles, but still continued from the west and northwest. At about 5 a. m. of February 6th a tug with libelant's scow in tow started from Staten Island and crossed the Red Hook Flats. When about 100 feet distant she saw the stick or pole to which the light aforesaid was fastened, but there was no time to prevent libelant's vessel from running into the wreck. The lantern was in place, but not lighted. This action was brought to recover for the resulting injuries.

Everett, Clarke & Benedict, of New York City (A. Leo Everett, of New York City, of counsel), for appellant.

Harrington, Bigham & Englar, of New York City (Israel A. Washburne, of New York City, of counsel), for respondent.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] We agree with the decision in Eastern Corporations v. Great Lakes, 256 Fed. 497, that the act of Congress above quoted is a criminal statute, and further that the duty of marking a wreck thereby imposed does not arise until the owner receives information that his vessel is sunk.

[2] We are also of opinion that the effect of any failure to observe the provisions of this statute raises a presumption of negligence, or, as the matter is sometimes put, a failure to do what the act requires is evidence of negligence; but it is no more. Thus for civil purposes the act is but declaratory of the general maritime law in this respect. The Plymouth, 225 Fed. 483, 140 C. C. A. 1, and cases cited.

[3] Thus the question here is whether respondent has successfully rebutted the presumption or evidence furnished by the bald fact that it did not maintain (in the sense of keeping it burning) a light upon this wreck.

A majority of this court are of opinion that the owner's responsibility is to be measured, not by what might have been done, but by what was actually done, and that the sufficiency of the steps taken are to be judged by what men of reasonable skill and acquainted with the conditions of New York harbor would do under similar circumstances. It is proven without contradiction that the pole or spar to which the lantern was fastened always remained in place; it was sufficient in strength. We find it proven that the lantern rested at least five feet above the surface of the water. Why it went out, and when that occurred, cannot be known. When respondent discovered it out (at about 10 a. m. February 6th) the oil supply was ample and the investigating superintendent only "guessed" that the action of the sea had "knocked it out or put it out."

It is suggested in argument that it was negligent to lash the lantern to the pole, because it would thresh with the pole as it rocked in the seaway; but we think that that is exactly what does happen when a lantern is used as a signal light on a sea-going scow. Nor do we think that waves of sufficient height to quench the light from a lantern 5 feet above the surface of New York harbor are reasonably to be expected. It is also suggested that respondent might have caused its tug to lay by the wreck during the night. We discover no such obligation imposed by the statute, and think that the measure of liability must be the same for all men. Quite probably the respondent corporation might have caused a tug to stand by, but it was under no higher or other duty than a man who had no tug. What was done was performed by a qualified harbor captain of many years' experience (respondent's superintendent), and what he did was, first, what a good harbor man would do; and, second, it was sufficient for the purpose, had it not been for waves of most remarkable violence for Red Hook Flats.

Finding, therefore, no negligence in the respondent, the decree below is reversed, with costs, and the cause remanded, with instructions to dismiss the libel.

WARD, Circuit Judge (dissenting). I am unwilling to relax the very high degree of care that in the nature of things lies upon the owners of wrecks to light and keep them lighted at night. In a frequented thoroughfare like the harbor of New York, where for the want of a light the most deplorable sacrifices of life and property may result to innocent persons, this obligation should be strictly enforced. While

the act of March 3, 1899, being criminal, is not conclusive of the respondent's negligence in this civil action, still it is evidence of negligence, and of the degree of care which Congress thinks such circumstances call for. McRickard v. Flint, 114 N. Y. 222, 21 N. E. 153.

The respondent had some 10 hours in which to take precautions for the night, yet, though the wind was blowing during the whole of this time at between 8 and 9 of the Beaufort scale (that is, from a fresh to a strong gale), it did no more than lash an ordinary hand lantern on a short pole on the scow which was surging bottom up in the high sea. The character of the lantern used being a very material element in considering whether the respondent exercised the care according to the circumstances which prudent men would have exercised, it ought to have been, but has not been, produced. To lash it to the top of a short pole in this wind and sea seems to me to have been obvious carelessness. The motion of the wreck in the sea would evidently subject the lantern to a series of short, quick, and violent jerks quite likely to extinguish the flame, and the wind might have been fairly expected to blow it out. If the respondent did not wish to incur the expense of getting a wrecker to take charge, or of calling upon the United States authorities to do so, it could at least have stood by with one of its tugs during the night to warn approaching vessels of the danger. The Plymouth, 225 Fed. 483, 140 C. C. A. 1.

It is intimated in the opinion of the court that one who had not a tug could not have done this. But the measure of care is exactly the same in the case of a poor as in that of a rich vessel owner; the only difference being the practical consideration that injured parties may not be able to recover their damages from one, while they may do so from the other.

I think the decree should be affirmed, but with leave to respondent to limit its liability.