## THE SNUG HARBOR.

### EASTERN TRANSP. CO. v. UNITED STATES et al.

### DUKE et al. v. SAME.

(District Court, E. D. Virginia. September 30, 1922.)

United States ⟾125—United States, under Suits in Admiralty Act, held under same liability as private owner for failure to mark wrecks.

The United States, by virtue of Suits in Admiralty Act March 9, 1920, § 2, *held* under the same duty as is imposed on private owners by Act March 3, 1899, § 15 (Comp. St. § 9920), to mark wrecks, and under the same liability for failure to do so.

In Admiralty. Libels by the Eastern Transportation Company and W. Bernard Duke and others, respectively, against the United States and others, growing out of the sinking of the steamship Snug Harbor. On motion to dismiss. Motion denied.

Baird, White & Lanning, of Norfolk, Va., and Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (John M. Woolsey, of New York City, and Edward R. Baird, Jr., of Norfolk, Va., of counsel), for libelant Eastern Transp. Co.

⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

H. H. Rumble, Sp. Asst. in Admiralty to U. S. Atty., of Norfolk, Va..
Blodgett, Jones, Burnham & Bingham, of Boston, Mass., and Hughes,
Vandeventer & Eggleston, of Norfolk, Va., for respondent Seaboard
Transp. Co.

GRONER, District Judge. This is a motion to dismiss for lack
of jurisdiction. Libelants claim against the United States, as owners of
the steamship Snug Harbor, and the Seaboard Transportation Com-
pany, as owner of the barge Pottsville and the tug Covington. The
Snug Harbor, a Shipping Board vessel, was sunk about 9:30 p. m. Au-
gust 15, 1920, about 4¼ miles east by north from Montauk Point, as
the result of a collision with the Pottsville, in tow of the Covington.
The place of the sinking is alleged to be a frequented channel way
within the inland waters of the United States, and the basis of liability
is the alleged failure to mark the position of the wreck, or to remove the
same, as a result of which two barges belonging to libelant came into
contact with the wreck and were sunk, 29 days after the first collision
and sinking.

It will thus be seen that the suit is brought upon the theory that the
United States, by virtue of the Suits in Admiralty Act (41 Stat. 525),
are brought within the provisions of the Act of March 3, 1899 (Comp.
St. § 9920), making it the duty of the owner of a vessel sunk in a
navigable channel to immediately mark it with a buoy by day and a
lighted lantern by night. The applicable parts of the act in question
provide as follows:

"That no vessel owned by the United States * * * shall hereafter, in
view of the provision herein made for a libel in personam, be subject to arrest
or seizure by judicial process," etc.

"That in cases where if such vessel were privately owned or operated
* * * a proceeding in admiralty could be maintained at the time of the
commencement of the action herein provided for, a libel in personam may be
brought against the United States; * * * provided that such vessel is
employed as a merchant vessel. * * *"

The United States deny that the suits in Admiralty Act may be so
construed as to impose on them the same duty as is imposed by a regu-
latory statute (Act of March 3, 1899) on private owners to mark
wrecks, or the same liability for failure to do so; that the liability here
asserted is not a liability of the vessel, but a personal liability of the
United States to perform a duty imposed by statute, and that in the very
nature of things the sovereign cannot be guilty of a violation of its own
statute, certainly not without its consent, and that the provisions of the
Suits in Admiralty Act give no consent.

In England, the law seems to be that the owner of a vessel sunk in a
channel way, who has not abandoned the vessel, is liable for failure to
mark the wreck, if other shipping is thereby damaged. The Snark,
Prob. D. 105, C. A.; The Utopia, A. C. 492, P. C.; The Douglas, 7
Prob. D. 151, C. A. The question of abandonment would, under such
circumstances, seem clearly to be a question of fact.

The doctrine stated above, as applicable under the English law,
was, perhaps, less well recognized in the American courts, although in
a number of cases decided prior to the act of 1899 the same general

principle is announced. The Plymouth, 225 Fed. 483, 140 C. C. A. 1; People's Coal Co. v. Second Pool Coal Co. (D. C.) 181 Fed. 609; Id., 188 Fed. 893, 110 C. C. A. 526. There is, however, now no contention between the parties, nor indeed is there ground for any, but that under the provisions of the Act of March 3, 1899 (section 9920, U. S. Comp. Stats.), the owner of a vessel sunk in a navigable channel is required, immediately, to mark the wreck with a buoy during the day and a light at night, and to maintain such marks until the sunken craft is removed or abandoned, and to account for any damages sustained by other vessels by reason of his failure so to do. The Anna M. Fahy, 153 Fed. 866, 83 C. C. A. 48; The Macy, 170 Fed. 930, 96 C. C. A. 146; People's Coal Co. v. Second Pool Coal Co. (D. C.) 181 Fed. 609; Id., 188 Fed. 893, 110 C. C. A. 526. Since, therefore, admittedly, this duty is imposed upon the owners of vessels privately owned or operated, it would logically seem to follow, in the absence of anything to the contrary, that in section 2 of the act of March 9, 1920 (41 Stat. 525), the United States had consented to be held to accountability equally and to the same extent. The ordinary and usual interpretation of the language of the section would so imply, for it is neither more nor less than the plain statement that in all cases in which suit in admiralty may be brought against the vessel privately owned, a libel in personam may be brought against the United States, where the United States are employing such vessel in the merchant service.

But counsel for the United States insist that this is not the case, and say that the act of March 3, 1899, is a penal statute, and was never intended to apply to the government itself; that the United States cannot commit a legal wrong, nor be answerable in one of their courts for a violation of a regulatory statute. Undoubtedly this is true, but it does not, it seems to me, necessarily follow that, because the United States can do no legal wrong, they may not consent to be answerable for a tort committed in their behalf, where such tortious act results in injury to others. On the contrary, Congress has a number of times recognized such obligation by the passage of special acts permitting suits against it for injuries occurring as a result of negligence on the part of naval vessels. And if this be true, then the only question in the case at bar is: Has such consent been given? Undoubtedly, the provisions of the Suits in Admiralty Act permit suits against the government for tort as well as for breach of contract. The negligence of the master or crew of a vessel, in any one of a dozen ways, might create liability for which no immunity could be claimed; and the same is true for the negligent violation of federal statutes.

It would not now be contended for a moment that a Shipping Board vessel, causing injury to another through failure to have, as required by law, a licensed pilot aboard, would be entitled to immunity because of government ownership. Again, by way of illustration, all vessels are required by statute to be equipped with, and have burning at night, certain kinds of lights, located at certain parts of the vessel. It would not seem to be a reasonable proposition for a Shipping Board vessel not thus equipped, and thereby causing damage to another, to escape liability because of government ownership. And if this be true, it would be difficult to distinguish in principle between such a case and that at

bar. So it would seem that Congress, in the passage of the Act of March 9, 1920, intended to waive its claim of immunity, and place itself upon a parity with other ship owners engaged in similar trade and traffic; to take upon itself the same obligation that by law it imposes upon others in like business. If it had not so intended, the addition of a few words to paragraph 2 of the quoted section would have made that determination manifest and beyond question. A reservation of immunity in suits sounding in tort is contained in the Tucker Act, and in the Court of Claims Act. It is absent in the Suits in Admiralty Act; and it would, it seems to me, be to assume the unthinkable to say that the draftsman of the latter act did not have in mind the different regulatory statutes then in effect, or that Congress did not intend to make the obligation to observe these statutes as much the duty of a government owned vessel, engaged in private enterprise, as of a privately owned vessel, likewise so engaged. Not only, therefore, does the express language of the act, but equally the failure to limit its terms, lead to the conclusion of an abandonment of immunity, under the circumstances obtaining in the instant case.

The further ground of the motion to dismiss is that, since the libel alleges that the Snug Harbor was a total loss, and since, therefore, no suit in rem could have been maintained against the vessel, a suit in personam will not lie against the United States, under the Act of March 9, 1920. Without now passing upon the question of whether the act in question merely substitutes an action in personam for an action in rem, I am of opinion that the motion to dismiss on this ground should be denied, and that this question should be determined after the facts are elicited in the trial of the case.

And since there is no presumption of abandonment, and as that question may be determined only upon a hearing and trial, the motion to dismiss on behalf of the United States ought to be, and is, denied. The motion made on behalf of the Seaboard Transportation Company is likewise denied. The defenses applicable to that respondent can be better determined after a full hearing.

Motion to dismiss denied.