**NATIONAL FORWARDING CO. v. PAYNE, Director General of Railroads, et al.**

(District Court, S. D. New York. July 13, 1923.)

1. Navigable waters ⬿24—Water in slips between piers is part of "navigable channel."

   The water in slips between piers extending into a navigable channel is a part of the "navigable channel," within the meaning of Act March 3, 1899, § 15 (Comp. St. § 9920), requiring the marking of wrecks sunk in a navigable channel.

2. Navigable waters ⬿24—Owner of unmarked wreck held liable for injury to vessel by collision.

   The owner of a coal boat sunk in a slip, who failed to mark it by a buoy, as required by Act March 3, 1899, § 15 (Comp. St. § 9920), *held* liable for injury to a vessel entering the slip by collision with the wreck.

3. Navigable waters ⬿24—Marking of wreck held insufficient.

   Placing of a small red flag on the end of a pier, *held* insufficient to mark the position of a boat sunk in the adjoining slip.

4. Navigable waters ⬿24—Owner under duty to mark wreck independently of statute.

   Independently of statute, it is the duty of the owner to mark a submerged wreck, which is an obstruction to navigation.

In Admiralty. Suit by the National Forwarding Company, owner of the Steam Lighter Transit, against John Barton Payne, Director General of Railroads, Agent, Pennsylvania Railroad, with Elmer A. Keeler, doing business as the Keeler Transportation Line, impleaded.

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Libel dismissed as to Director General, and decree for libelant against impleaded respondent.

Bigham, Englar & Jones, of New York City (Andrew J. McElhinney, of New York City, of counsel), for libelant.

Burlingham, Veeder, Masten & Feary, of New York City (Chauncey I. Clark, of New York City, of counsel), for respondent Director General of Railroads.

Macklin, Brown & Van Wyck, of New York City (Horace L. Cheyney, of New York City, of counsel), for respondent Keeler Transp. Co.

GODDARD, District Judge. In admiralty. Suit to recover for damages to steam lighter. This is an action for damages to the lighter Transit while under charter to the Director General of Railroads. The answer of the respondent alleges that the damage was sustained by the lighter, which was entering a slip between the New York, Ontario & Western Railroad pier at Guttenberg, N. J., and the Fairbanks Company pier, on January 30, 1918, and that the damages were sustained as a result of a collision with the wreck of the coal boat Irwin, which was lying sunk and submerged. A petition was also filed by the Director General of Railroads against Elmer A. Keeler, doing business under the name and style of the Keeler Transportation Line, as the owner of the Irwin, charging him with fault to properly mark the wreck.

The respondent Keeler appeared and filed an answer on the ground that the wreck had been properly marked. By his answer to the petition, respondent Keeler alleged that the boat Irwin was not sunk in a navigable channel, but was sunk within the pier head lines, and, owing to the presence of heavy ice, it was impossible to maintain a buoy over the wreck, and that all other precautions necessary were given to the owners of vessels of the presence of the sunken boat. He further alleged that the Transit did not collide with the Irwin. The Irwin sank on January 16, 1918, having been struck by a heavy floe of ice. She was lying outside of one other boat, which was moored on the northerly side of the Ontario & Western pier. At the time of the alleged accident the Transit was bound up the river from Pier 64 to the Fairbanks Pier, which lies immediately north of the Ontario & Western pier.

[1] The wreck was not properly marked as required under the provisions of section 15 of the Act of 1899, 30 Stat. 1152 (9 Fed. Stat. [2d Ed.] p. 60 [Comp. St. § 9920]), reading as follows:

"Sec. 15 *(Obstruction of Navigation by Anchored or Sunken Vessels, Floating Logs, etc.—Sunken Vessels to be Marked and Removed).* That it shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft; or to voluntarily or carelessly sink, or permit or cause to be sunk, vessels or other craft in navigable channels; or to float loose timber and logs, or to float what is known as sack rafts of timber and logs in streams or channels actually navigated by steamboats in such manner as to obstruct, impede, or endanger navigation. And whenever a vessel, raft, or other craft is wrecked and sunk in a navigable channel, accidentally or otherwise, it shall be the duty of the owner of such sunken craft to imme-

diately mark it with a buoy or beacon during the day and a lighted lantern at night, and to maintain such marks until the sunken craft is removed or abandoned, and the neglect or failure of the said owner so to do shall be unlawful; and it shall be the duty of the owner of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently, and failure to do so shall be considered as an abandonment of such craft. and subject the same to removal by the United States as hereinafter provided for."

The respondent Keeler contends that this statute does not apply to vessels sunk within a slip, for the reason that such waters are not a part "of the navigable channel," and further that the floes of ice in the slip made it impossible to place or maintain a buoy upon the wreck, and that a red flag about two feet square had been nailed on one of the upright stanchions of the coal pier by some of the employees of the Ontario & Western Railroad Company, about the height a man could reach—seven feet above the pier. The crew of the Transit deny its existence, but it may well be that such a flag had been put up, for it would hardly be observable, for there are a number of stanchions similar to the one on which it was claimed to have been fastened for supporting the railroad tracks overhead, and, unless there was enough wind from the right direction, it would not be noticeable. It also appears that the respondent Keeler caused to be placed in the New York Herald, on or about January 17, 1918, the following notice:

"Notice to Mariners.

"Coal barge Irwin sunk at end of Pier 2, Ontario & Western coal docks, Guttenberg, N. J. Masters of tugs and barges please take notice.
"Very truly yours, Elmer A. Keeler."

One Zimmerman, in the employ of the respondent, Keeler, testified that the following day he telephoned the Lighthouse Department at Tottenville, and notified them that the boat Irvin had been sunk, and that they advised him that on account of the condition of the ice, it would be impossible to put a buoy over the wreck; that they would investigate further. He admitted that he did not write to them, and no record of the Lighthouse Department was offered at the trial to show that such a message had actually been received.

The learned advocate for the respondent Keeler cites a number of cases, which he claims support the theory that the waters between piers are private and not public navigable waters; but upon examination of these cases I find that they refer to the pier itself, or the wharves and docks constructed under special conditions, and not extending out into a navigable channel. I am of the opinion, however, that the water between such piers still retains its character of navigable water, and that section 15 continues to include such waters. I find nothing to indicate that, because permission has been granted to extend the pier out into a navigable stream, the surrounding waters cease to be public navigable waters. United States v. Burns (C. C.) 54 Fed. 351; Cummings v. Chicago, 188 U. S. 410, 23 Sup. Ct. 472, 47 L. Ed. 525; Montgomery v. Portland, 190 U. S. 89, 23 Sup. Ct. 735, 47 L. Ed. 965; People v. Vanderbilt, 28 N. Y. 396, 84 Am. Dec. 351; Matter of the City of New York, 217 N. Y. 17, 111 N. E. 256.

Moreover, if such a rule as the advocate for the respondent Keeler contends were to be adopted, what would be the limits? If there were only one pier on the New Jersey side of the North River, would it be that all of the water north or south of this was to be considered not a part of the navigable channel? To increase the number of piers should not change the result. When the length of the piers varied, would it be the longest pier that governed? In the present case the accident happened within the line of the Ontario & Western pier, the longer one, but beyond the line of the Fairbanks pier, which is the pier for which the Transit was bound. Such water is included within the definition of navigable waters.

"Water is navigable in law, although not tidal, where navigable in fact, and is navigable in fact where it is of sufficient capacity to be capable of being used for useful purposes of navigation; that is, for trade and travel in the usual and ordinary modes." 29 Cyc. 289.

"Where water is navigable whether or not within the ebb and flow of the tide, the public have a common right to use it for navigation as a public highway * * * This right of navigation extends not only to the main channel, but also to the water between high and low water marks, except where it will interfere with buildings erected thereon by the owner of such land." 29 Cyc. 304:

[2] The respondent Keeler also endeavors to excuse his failure to place a warning signal upon the wreck because of the ice floes. He called witnesses who testified that buoys would not remain. Other witnesses testified that, if properly anchored, it would have remained. The Irwin was sunk on January 16th, and at no time prior to the happening of this accident, January 30th, was any effort made to place a buoy over the wreck. In fact, cabins of the boat, which had stuck up out of the water and indicated that there was a wreck, were removed by the respondent Keeler.

[3] A small red flag, which had been nailed onto one of the stanchions of the Ontario & Western Railroad pier by some one other than the respondent, even if observed, might have meant many things, for instance, the presence of dynamite on the pier, or that the pier was dangerous. It was not a fair warning of the presence of a sunken boat between the two piers. Certainly the respondent Keeler was called upon to provide a more efficient warning. The place where she sunk was one where boats were likely to pass over frequently. This is quite a different case from Wayne Transportation Co. v. Pennsylvania Railroad, decided by Augustus N. Hand, District Judge (orally, not for publication), for in that case the boat was grounded on the mud flats outside of the channel.

[4] Even though section 15 did not apply, the owner of this wreck was obliged to mark it. In The Plymouth, 225 Fed. 483, 140 C. C. A. 1, Ward, Circuit Judge, said:

"Counsel seeks to distinguish this case on the ground that, unlike our act of 1899, the Removals Act [English wreck act] does not expressly require the owner of a wreck in navigable waters to buoy her, but without any statute the law lays this obligation upon every owner who does not abandon a wrecked vessel."

The wreck in the present case had not been abandoned by the owner. Accordingly I find that the collision was solely due to the failure

of the respondent Keeler to properly warn vessels of the presence of the wreck, and that as a result the Transit struck it and was damaged.

For these reasons, I must allow a decree dismissing the libel against the Director General, and holding the owner of the Irwin liable, with a reference to compute the damages.