### THE CHAMBERS.

### DIRECTOR GENERAL OF RAILROADS (Pennsylvania R. Co.) v. MOLYNEAUX.

(District Court, S. D. New York. February 27, 1924.)

1. **Navigable waters ⟜26(3)—Evidence held to show collision with respondent's wreck.**

    Evidence *held* to prove that libelant's tow struck respondent's wrecked boat, and not other wreck.

2. **Navigable waters ⟜24—Owner of wreck held delinquent in statutory duty to maintain buoy.**

    The statute (Comp. St. § 9920) imposes a continuous duty, and owner of wrecked boat did not relieve himself from liability for damages to tow striking wreck by buoying same where buoy was carried away, but was required to show why he did not watch the buoy, what efforts he made, the frequency with which he procured reports as to whether buoy had carried away, and what prevented him, when carried away, from substituting a new one.

3. **Navigable waters ⟜24—Owner of wreck without buoy liable for collision, though known to be in channel.**

    Owner of wrecked boat in a channel without buoy *held* liable for damage to tow, which struck wreck, though tow knew wreck was in channel, but did not know exact location.

4. **Navigable waters ⟜24—Owner of wreck without buoy held liable as against contention spar at night would have been of no service.**

    Owner of wreck without buoy *held* liable for damage to tow striking wreck at night, as against contention that spar at night would have been of no service, such objection being too speculative, as owner, delinquent under the statute, was required to prove clearly and beyond doubt that his default did not contribute.

In Admiralty. Libel by the Director General of Railroads (operating the Pennsylvania Railroad Company) against William Molyneaux, owner of the barge Chambers. Decree for libelant.

Chauncey I. Clark, of New York City, for libelant.

Horace L. Cheyney, of New York City, for respondent.

LEARNED HAND, District Judge. This case involves two losses, the second one after the Lighthouse Department had buoyed the wreck, for which, under the Plymouth, 225 Fed. 483, 140 C. C. A. 1, there was no liability. It comes down, therefore, to the first collision, on January 22d.

[1] Two questions are involved: First, whether the tow struck the Chambers or the Mulqueen; and, second, if it struck the Chambers, whether the respondent is liable under the statute. We have pretty good evidence of how the boats lay, depending on the testimony of Kiple, which I ought not to ignore, considering the length of time he

---

⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

spent on the spot, his careful measurements of the positions, and his very clear recollection. I believe the Chambers was substantially parallel with, and intruded a little into, the channel. I think the Mulqueen was at a slight angle to the thread of the channel, and probably for the most part outside the channel boundary.

It is nearly a matter of demonstration that the tow fouled the Chambers, and not the Mulqueen, for the following reasons: The Red Rose might, it is true, have got far enough to the north to foul the Mulqueen first, because she lay to the westward of the Chambers. But, if she had done so, she would have then fetched up against the Chambers, which would have been squarely in her path, and she would have stopped and parted her hawser. What she did was to graze along, but not to stop. That could only have happened if she touched only the wreck lying furthest to the south, which was the Chambers. Hence it is practically certain that she struck the Chambers.

[2] Coming now to the owner's liability, I must remember that two judges of this court, both now Circuit Judges, have expressed themselves against the respondent. It is quite true that Judge Hough's remarks in the case of McWilliams v. P. R. R., 300 Fed. ——, were obiter; but I do not think I ought to disregard them on that account, even though they·are not authoritatively binding on me. Judge Mayer, in the case of P. Sandford Ross, Inc., v. O'Boyle, in substantially the same case, ·held the owner. But, aside from those opinions, I think that the liability is established. My reasons are these: It is shown that this wreck was buoyed the day after it occurred. This was done by Cokeley, the dockmaster at South Amboy of the Pennsylvania Railroad. He took a spar, painted it red, and sunk it on the wreck with iron weights. It carried away, just when, no one knows, and thereafter the wreck was not buoyed.

The statute (Comp. St. § 9920) imposes a continuous duty and I think that an owner should show why he did not watch the buoy, what efforts he made, and what prevented him, when it carried away, from substituting a new one. The respondent did not do any of these things; he merely took the assurance of people, who he supposed were well advised, that nothing more could be done. Probably he could not have got a tug on the 12th or 13th; but it does not appear that, if he had kept·watch, he could not have hired the Pennsylvania Railroad again to buoy the wreck after the first buoy had carried away, nor is there any evidence whatever that later in the month he could not have got some one else to do it. It seems to me that the minimum measure of his duty was to get frequent reports, which he certainly could have got, whether the buoy had carried away, and, if it had, to try to get tugs. If he could show, when these reports had been made, that he could not at that time get the proper help, perhaps he would have been excused. But he did nothing of the kind. He was not sufficiently diligent, considering how frequently his wreck exposed other shipping. Either he must have done more or have abandoned his rights, which would have cleared him.

[3, 4] Finally, it has been argued that it made no difference anyway, because the tow knew where the wrecks were, and that a spar at night

would have been of no service anyway. As to the first, I think the answer·is clear. It is one thing to know that hereabouts there lies a wreck, and another thing to know that a wreck lies just below this buoy, especially if you are navigating under such conditions as these. In such a channel the exact location of the wreck is of the utmost value. As to whether a spar might have done no good at night, I can only say that the objection is too speculative. I have found that the owner was delinquent in the duty imposed upon him by the statute, and it is he who must show very clearly and beyond doubt that his default did not contribute. Surely he cannot prove that. Even if it was impossible to keep a lantern there, which was probably the case, still a spar might have served, and the respondent was bound to prove that it would not.

This is indeed a hard case, arising from a drastic statute. I should like, if I could, to excuse the respondent; but I do not see how I can.

There will be no costs.