### ELIZABETH CO., Inc., v. MESICK & MESICK, Inc., et al.

(Circuit Court of Appeals, Second Circuit.   April 7, 1924.)

No. 329.

1. **Navigable waters ⬤⇒24—Statutory duty to mark wreck cannot be delegated.**
   The duty imposed on the owner by Act March 3, 1899, § 15 (Comp. St. § 9920), to mark a wreck with a buoy or beacon during the day and a lighted lantern at night, cannot be delegated.

2. **Navigable waters ⬤⇒24—Evidence held not to establish negligence in permitting a moored tow to obscure light on wreck.**
   Evidence *held* not to establish negligence of the owner of a tow tied to a stakeboat in New York Harbor, by permitting it to swing so as to obscure the buoy or beacon marking a sunken wreck, some 150 feet from the stakeboat.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Elizabeth Company, Inc., owner of the steam tug Charles A. Kennedy, against Mesick & Mesick, Inc., and James C. Davis, Director General of Railroads, as Agent (Pennsylvania Railroad). From the decree, the Director General appeals. Reversed in part.

Appeal by respondent Director General, as agent for Pennsylvania Railroad (called, for brevity, P. R. R.), from a final decree of the District Court for the Southern District of New York in favor of libelant against Director General for $19,067.81. The libel was dismissed as to Mesick. The libel was filed against Mesick, owner of the wreck Harry, and against the Director General, for damages sustained by the libelant's tug, Charles A. Kennedy, in running on the Harry on December 20, 1918. The Ox was a P. R. R. stakeboat, length about 150 feet, beam about 40 feet, moored between Ellis and Bedloe's Island in New York Harbor. On the morning of December 16, 1918, the scow Harry was sunk near the Ox by swells from United States destroyers.

Edward K. Mesick learned of this incident about noon and promptly communicated with the Government Lighthouse Department. The next day— i. e., December 17th—the Lighthouse Department established a buoy on the side east of the wreck. This buoy was about 150 feet west of the P. R. R. tow, hanging on the Ox and about abeam of the first or second tier of the tow. After the wreck was buoyed, Mesick employed Capt. Clark, of the Ox, to keep a lighted lantern on the buoy at night, and paid him $60 for his services during the period from December 17, 1918, to February 6, 1919.

At about 1:30 p. m. on December 20th, Clark placed a lighted lantern on the buoy, and about half an hour later took his wife ashore to a physician, leaving the light burning on the buoy. At about 5 p. m., or perhaps a few minutes before that hour, the tug Kennedy, bound from Red Hook to Communipaw, came up past the tail of the tow and ran on the wreck of the Harry. The P. R. R. tow at the stakeboat, according to Sutherland, a deck hand

on the Kennedy, consisted of three tiers and one boat behind, or, as said by Sadie Ogden, daughter of Capt. Clark, "three or four tiers of boats."

The Kennedy sank and her crew was rescued by the tug Ganoga, which was above Ellis Island and saw the Kennedy on the wreck. The tide was ebb at the time of the occurrence. Whether there was a light on the buoy was a disputed question.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark and Frederic Conger, both of New York City, of counsel), for appellant.

Foley & Martin, of New York City (William J. Martin and George V. A. McCloskey, both of New York City, for libelant appellee.

Macklin, Brown & Van Wyck, of New York City (Horace L. Cheyney, of New York City, of counsel), for respondent appellee.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). [1] 1. As to the Director General: Under section 15 of the Act of March 3, 1899 (Comp. St. § 9920), it was the duty of the owner of the Harry "to immediately mark it with a buoy or beacon during the day and a lighted lantern at night, and to maintain such marks until the sunken craft is removed or abandoned. * * *" It is settled law in this circuit that the duty thus imposed by the statute cannot be delegated. No question arises here as to knowledge of the owner, because the admitted fact is that the owner was informed of the wreck on the day of the accident and took appropriate steps to perform its duty. It is plain, therefore, that there was no duty cast upon the Director General to maintain either the buoy or the light on December 20th. The Anna M. Fahy, 153 Fed. 866, 83 C. C. A. 48; The Macy, 170 Fed. 930, 96 C. C. A. 146. See, also, The Drill Boat, No. 4 (D. C.) 233 Fed. 589.

[2] The only theory upon which the Director General could be held was that he was guilty of negligence in permitting the tow to swing in such a manner as either to extinguish the light, if it was night, or to obscure the buoy, if it was still daylight. The evidence is overwhelming that the tow was well clear of the buoy, probably about 150 feet. There is, of course, the familiar conflict of testimony based on estimates, as to how far the buoy was from the wreck. If, contrary to statutory requirement, the buoy was 75 to 150 feet from the wreck, as testified to on behalf of libelant, the responsibility was not that of the Director General, nor, for that matter, of the owner. The Plymouth, 225 Fed. 483, 140 C. C. A. 1. We are satisfied, however, that the buoy was over the wreck.

The testimony of libelant's witnesses as to not seeing the buoy or the light is not convincing; but, passing that inquiry, we think the mute facts as to conditions of tide and wind bear strongly in favor of the Director General. The tide was strong ebb on December 20, 1918. It was low water at Governor's Island at 4:28 p. m. The tide continues to run out of the North River for 3 to 3½ hours after low water at Governor's Island. At or about 5 p. m., therefore, the tow must have been tailing down the bay and well clear of the wreck and buoy. Indeed, two hours later, according to Welsh, the master of

the Ganoga, the tow had not swung toward the wreck. The wind was light southwest, 13 to 14 miles an hour. Of course, a different situation might have been presented, had the tide been flood, and had there been a strong northeast wind.

Without further analysis, we may state that the record fails to disclose any negligence in this or any other respect on the part of the Director General.

2. As to Mesick: It is stated in the brief of libelant that the sun set on December 20, 1918, at 4:30 p. m., and that it was dark when the accident happened. After having testified that the accident happened about "six or seven minutes" after 4:45 p. m., libelant's witness Sutherland, deck hand on the Kennedy, was asked, "Daylight?" and answered, "Yes; just breaking." He was then asked, "But it was daylight?" and answered, "Yes; it was daylight; yes."

Bothwick, the master of the Kennedy, testified that he had set his running lights and it was "just about to make dark." On cross-examination he was asked, "Q. It was dark enough, so that you think it was necessary to have a light on that spar?" and answered, "Yes, sir." However, an hour or an hour and a half later, when it was "real dark," he said he could make out this spar buoy without a light on, 125 to 150 feet away, because "you can see a buoy that far."

Littlefield, master of the tug Daniel McAllister, testified, as to his own tug:

"We was putting them [the lights] up. It was between sunset and dark."

Welsh of the Ganoga testified:

"Well, looking from the position I was looking, it was just sunset, and I was looking towards the westward, which enabled—I thought it gave me a better view, looking toward the sun than looking the other way. I could clearly see the Kennedy; it was not dark; it was getting dark, but I could see a distance from above Ellis Island down to where the Ox was. * * * Yes; it was daylight enough for that."

Sadie Ogden, for the Director General, testified:

"It was plain; it was light; it was not dark."

The foregoing is a summary of all the testimony on this point. From what has been quoted supra, we think the conclusion is irresistible that the buoy could have been seen from the Kennedy, if proper diligence had been used, and that, as it was still daylight, the question as to whether or not the lantern was lighted became immaterial. We may add, however, that the court is not satisfied that the libelant sustained the burden of proving that the light was not burning.

We think the owner of the Harry did all it was obligated to do, and that no facts have been produced to charge it with liability.

Decree affirmed as to Mesick, without costs, and reversed as to the Director General, with costs.