WILSON et al. v. MITSUI & CO., Limited.

THE OREGON.

District Court, N. D. California, S. D.
April 16, 1928.

No. 19237.

Navigable waters ⬯24—Undertaking of government Lighthouse Service to mark wreck held to relieve owner of wreck from liability for alleged failure to maintain marks (33 USCA § 409).

Where government Lighthouse Service moved buoy near wreck, and Coast Guard undertook to warn in-coming vessels of its location, government, by undertaking to mark the wreck, relieved owner of wreck from liability for damages to another vessel striking wreck on account of failure to maintain marks required by Act March 3, 1899, § 15 (33 USCA § 409; Comp. St. § 9920), irrespective of whether services of lighthouse service were volunteered or paid for by the owner of the wreck; services being in exercise of its governmental authority.

In Admiralty. Libel by Henry Wilson and others against Mitsui & Co., Limited. Libel dismissed.

Andros, Hengstler & Dorr, of San Francisco, Cal., for libelants.

McCutchen, Olney, Mannon & Greene, of San Francisco, Cal., for respondent.

KERRIGAN, District Judge. This is an action brought by the owners of the steamship Oregon against Mitsui & Co., Limited, to recover damages alleged to have been sustained by the Oregon, the result of a collision between it and the steamship Horaisan Maru, which occurred March 8, 1926, on the bar at the entrance to Grays Harbor in the state of Washington.

The Oregon left San Francisco March 4, 1926, bound for Grays Harbor. On the same day the Horaisan Maru left Grays Harbor, and, while passing out over the bar, stranded and become a total loss. The position of the wreck was on the range used by vessels entering Grays Harbor. The Oregon arrived at Grays Harbor about 8 p. m., March 7th, the third day after the wreck, and anchored outside the bar. She was not equipped with a radio, and was without any information or warning in regard to the wreck of the Horaisan. On the next morning, March 8th, she hove up her anchor at about 5 a. m. and proceeded over the bar into the harbor. Only a small part of the wreck was above the surface of the water. Shortly after weighing

anchor, and while it was still dark, the Oregon struck the wreck, causing the injuries complained of.

The claim for damages is based on the ground that the owners of the Horaisan Maru failed to mark the wreck as required by law.

It is the duty of the owner of a sunken craft, in a navigable channel, to immediately mark it with a buoy or beacon during the day or a lighted lantern at night and to maintain such marks until the sunken craft is removed or abandoned. Section 15, Act of March, 1899, ch. 425; 9 Fed. Stats. Ann. (2d Ed.) 60 (33 USCA § 409; Comp. St. § 9920).

In part respondent contends that the Oregon was guilty of contributory negligence, and that the wreck had, prior to the collision been abandoned by its owners, who were thereby relieved of all responsibility with regard to it. According to the weight of the evidence, there is no substantial merit in the first of these contentions, and the conclusion I have reached on another aspect of the case renders a discussion of the interesting question of whether or not there was an abandonment of the Horaisan Maru, wholly unnecessary.

I agree with the contention of respondent that the Lighthouse Service undertook to mark the wreck, and assumed responsibility for so doing, thus relieving the owner of any obligation in that respect. The Lighthouse Service received notification that the Horaisan Maru had been wrecked in the channel to the harbor the evening of the day the accident happened. A notification to the same effect was given the next morning by the United States engineers at Seattle. Warrack, the lighthouse superintendent, arrived at Grays Harbor on the morning of the 7th of March. With three assistants he went to the wreck in a lighthouse tender. After a conference, it was decided to move a certain buoy to a point west and north of the wreck. This was done. The purpose of this change was to cause inbound vessels to pass on the port side of the red buoy and thus avoid the wreck. The Coast Guard had undertaken to warn in-coming vessels of the location of the wreck. These governmental services had thus been notified of the wreck; and it appears to have been generally understood by all immediately concerned that the government was in complete control of the situation. Warrack testified that "it was generally understood we would" mark or light the sunken vessel. "It was anticipated that we would" do so.

Under the authorities, the Lighthouse Service having undertaken to mark the wreck and thus protect shipping, it is clear that the owner was relieved of all responsibility. The question arose and in effect was decided in the case of The Plymouth (C. C. A.) 225 F. 483. There the evidence showed that the owner of a barge suffered damage because a sunken barge had been improperly marked. The evidence also showed that the owner of the wreck kept a tug in the vicinity to warn navigation from the time of the collision until the Lighthouse Service placed a gas-burning buoy there. The court treats of the effect of this act on the responsibility of the owner as follows:

"It is quite obvious that if the Lighthouse Department had marked this wreck of its own motion, as it might have done, the Hartford Company could not have moved the buoy or interfered with it in any way, whether it thought it properly placed or not, and if the Hartford Company had itself buoyed the wreck the Lighthouse Department in the exercise of its governmental authority could have changed the location of the buoy or replaced it with another. We think the Hartford Company fully complied with the requirements of the act of 1899, when it secured the services of the Lighthouse Department. No wiser or safer course could be taken than to rely upon the resources and competency of the Lighthouse Department in such case. It makes no difference in our opinion that the government made a charge for its service. It was all the same acting, not as the private agent of the Hartford Company, but in its sovereign capacity under the act of 1899, as agent for the whole public. The Hartford Company could not have ordered the buoy to be withdrawn, or have changed its location, or have controlled the Lighthouse Department in any way as a principal may control his agent."

Of course it makes no difference whether the services of the Lighthouse Service are volunteered, or whether they are paid for by the owner of the wreck. In either event the Lighthouse Service is acting in the exercise of its governmental authority. In the case of City of Taunton-Sunken Wreck (D. C.) 11 F.(2d) 285, 1927 A. M. C. 135, it was held that, when the government undertook to mark a wreck, the owner was relieved of responsibility. In the R. J. Moran (C. C. A.) 299 F. 500, 503, the court said:

"We adhere to the principle that the statute requires the owner alone to mark the wreck until the Lighthouse Department undertakes such duty."

The libel is dismissed, with costs to respondents.