## THE DALZELLACE.

### DALZELL v. VALVOLINE OIL CO.

District Court, S. D. New York.
Feb. 24, 1936.

Burlingham, Veeder, Clark & Hupper, of New York City (Eugene Underwood, of New York City, of counsel), for libelant.

Putney, Twombly & Hall, of New York City (Lemuel Skidmore and Frederic R. Sanborn, both of New York City, of counsel), for respondent.

COXE, District Judge.

This is a suit to recover for the damage alleged to have been sustained by the libelant's tug Dalzellace as a result of striking a submerged pile on land under water belonging to the respondent at Edgewater, N. J., on March 16, 1934.

The respondent maintained at Edgewater, N. J., a pier extending into the Hudson river; this pier stood on the respondent's own land; and the respondent also owned the land under water adjacent to the pier. At some time between 1925 and 1927 the respondent placed clusters of piles off the easterly end of the pier to protect it from injury from vessels using the adjoining slip. It is the libelant's contention that the Dalzellace struck a broken submerged pile originally forming part of one of these clusters, sustaining the injuries for which the present suit has been brought.

On March 16, 1934, the Dalzellace was ordered to Edgewater to assist in undocking the steamship Kemmel, which was berthed bow in on the northerly side of the Archer Daniels pier, just south of the respondent's pier; the slip in which the Kemmel lay was therefore the same slip which served the southerly side of the respondent's pier.

The Dalzellace arrived at the entrance to the slip at about 9 a. m.; the tide was then flood; and, in order to get into position at the bow of the Kemmel, the tug proceeded to back into the slip. This, together with the force of the tide, brought the stern of the Dalzellace close to the southerly cluster of piles off the end of the respondent's pier; and the witnesses for the libelant testified that during the maneuvering of the tug they felt a sudden and pronounced jarring of the vessel, saw a number of pieces of broken wood come to the surface under the tug's stern, and almost immediately thereafter noticed considerable straining and vibration of the engines. Smith, mate of the Dalzellace, thought that

the nearest the tug's stern came to the southerly cluster of piles was 3 feet; Larsen, the deckhand, estimated the distance at from 2 to 2½ feet.

The Dalzellace continued to have trouble with her engines while the Kemmel was being undocked, and, after the Kemmel left, the tug proceeded to Meseck's, where a report was made to the main office; and from there the tug went to the Tietjen & Lang yard for repairs. At Tietjen & Lang's the tug was placed in drydock, and it was found that the propeller shaft had been cracked in two places, necessitating the installation of a new shaft.

Capt. Fort, the master of the Dalzellace, reported in writing to the libelant the injury to his tug, stating that the "propeller struck a submerged piling that was broken off below the water line at the pier above, which is the Vacum Co's pier"; and, although this report does not appear to be dated, I am satisfied that it was made either on March 16, 1934, or immediately thereafter. The libelant did not, however, make any claim against the respondent for the damage until April 21, 1934.

In the meantime, and on April 9, 1934, the libelant had sent Ingram, a Merritt & Chapman diver, to Edgewater to examine the bottom adjacent to the pier; and Ingram testified that he found a submerged pile about 4 to 5 feet out from the southerly cluster of piles at the end of the pier. He also stated that the top of this submerged pile was about 4½ feet from the bottom, and appeared to have been newly broken. Later, and on May 7, 1934, the respondent had another diver, Nilsen, examine the bottom, and he likewise found a broken submerged pile in much the same place as testified to by Ingram. Nilsen stated, however, that the pile only stood about 3 feet up from the bottom of the river, and had no appearance of any fresh break at the top.

The depth of the water where the broken pile was found was variously estimated at from 29 to 32 feet at the time of the accident, and the draught of the Dalzellace was about 14 feet.

The respondent insists that the Dalzellace could not have struck the submerged pile off the pier in the way described by the witnesses; but clearly the tug did strike something while she was maneuvering near the end of the pier, and I do not think there is any inherent improbability in the story told by the witnesses as to the way the accident happened. Manifestly, there was a single broken, submerged pile at the exact place where the accident is alleged to have occurred, and I can see no reason to doubt that the upper portion of the pile was broken off by the force of the impact from striking the tug. I think, therefore, that it has been fairly established that the submerged pile was the cause of the damage.

The respondent further says that the entire credibility of the testimony of the libelant's witnesses is seriously affected by the failure of the libelant to give any notice of claim before April 21, 1934; and, although this delay necessarily subjects the claim to some suspicion, I think it has been satisfactorily explained. Moreover, the facts in the case have been fully substantiated, and I am satisfied of the authenticity of the master's written report of the accident, in which it was stated that a submerged pile was the cause of the damage.

It is also contended that the submerged pile was located on the respondent's own property, and that the Dalzellace was a trespasser. It has, however, been held that the waters of such a slip as the one in question are public waters. (National Forwarding Co. v. Payne [D.C.] 297 F. 663) and the Dalzellace was in no sense a trespasser. The submerged pile, in the condition in which it was found, was clearly a nuisance. The Dalzellace had no notice or warning of its existence, or that there was any danger in using the waters adjacent to the pier. The case, therefore, falls squarely within the decision of the Circuit Court of Appeals for this circuit in Corby v. Ramsdell, 48 F.(2d) 701.

There may be a decree for the libelant for full damages, with costs.