**POLING RUSSELL, Inc., v. UNITED STATES et al.**

**UNITED STATES v. NEWTOWN CREEK TOWING CO. et al.**

**THE POLING BROS. NO. 12. THE DOVER.**

**THE J. RAYMOND RUSSELL.**

No. 238, Docket 22322.

United States Court of Appeals Second Circuit.

Argued April 18, 1952.

Decided May 19, 1952.

Myles J. Lane, U. S. Atty., New York City, Charles A. Blocher, New York City, for appellant United States.

Alexander & Ash, New York City, Edward Ash, New York City, for appellee Russell Poling, Inc.

Bigham Englar Jones & Huston, New York City, Andrew J. McElhinney, New York City, for appellees Newtown Creek Towing Co., et al.

Before SWAN, Chief Judge, and AUGUSTUS N. HAND and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal from a decree in admiralty holding the United States solely liable for a collision on the morning of January 10, 1943, between its ship Dover and the barge Poling Bros. No. 12 in tow of the Motor Tug J. Raymond Russell, and holding the J. Raymond Russell free from fault. The Dover had come through Hell Gate on her way to Staten Island and was passing under the Brooklyn Bridge, slightly to the right of mid-river when she saw the red side light and white towing lights of the tug about three-quarters of a mile away bearing approximately a point on her starboard bow. The Dover's course was set a little to the west of Castle William Light on the northwest corner of Governor's Island; her speed through the water was 9½ knots per hour. Upon sighting the Russell to her starboard, the Dover sounded a two-blast signal indicating that it desired a starboard-to-starboard passage. About a minute later, having heard no signal from the tug and

having observed the latter's red light cross her bow from starboard to more than a point to port, the Dover then sounded a one-blast signal for a port-to-port passage and went 5 to 8 degrees to starboard. Less than a minute after sounding the one-blast signal, and still seeing only the Russell's red light and towing lights off to port, the Dover repeated the one-blast signal. Immediately thereafter, the tug commenced closing out her red light and opening up her green, whereupon the Dover instantly went hard right and full astern in an effort to clear but—the vessels being only 200 to 350 feet apart—the collision became inevitable and the Dover's bow struck the barge's starboard side about 6 to 10 feet abaft the bow of the barge. Just prior to the collision, while the Dover's engines were going astern, the tug was heard to sound an alarm.

On the night of the collision the tug J. Raymond Russell with the tank barge in tow was proceeding to an East River pier near the Brooklyn Bridge. The tug lay well aft on the barge's starboard side so that the latter's bow extended 125 to 130 feet forward of the tug's bow. The tug rounded the Battery to proceed up the East River making about 2 to 2½ knots against the ebb tide, and when about 450 feet off Pier 4, Manhattan, and heading in the direction of Brooklyn, she saw both colored lights and the masthead and range lights of the Dover some three-quarters of a mile above her in mid-river.

The trial court found that at this stage the Dover "appeared to be about dead ahead" of the tug. "Dead ahead" is to be read as "upstream" for, if then dead ahead of the Russell by course, the Dover would have been over on the Brooklyn shore. Observing the Dover, the tug's mate testified that by sighting aft he judged the Dover to be heading toward Castle William Light. The Russell was progressing to the Dover's port when she first sighted her. Continuing on until the vessels were within about one-half mile of each other, the tug—which had maintained its heading toward Brooklyn—sounded two blasts and, without waiting for a response, immediately put her helm left and maintained full speed. Although the

Dover's bearing from the Russell at the time of the two-blast signal is not stated, it is apparent both from the previous findings as to the situation when the Russell first sighted the Dover and from the findings as to the Russell's bearings from the Dover, that the Dover was then off the tug's port bow. When about a quarter of a mile from the Dover the tug, observing no change in the Dover's course, sounded a danger signal and reduced her engine speed to half. The tug then still had the Dover to port but continued to swing left and re-crossed the Dover's bow.

According to the testimony of the mate of the tug, about a minute before the collision, her captain entered the pilot-house, immediately sounded an alarm and ordered her engines full astern. Without any order from the master the mate put the helm hard left. Shortly thereafter, the barge and the Dover collided.

Those aboard the Russell testified that they never heard any of the Dover's signals, while the Dover's witnesses heard only the Russell's final danger signal.

The negligent navigation of the Dover is not questioned on this appeal but the United States asserts that the tug was also negligent and claims that the damages should be divided, to which we agree. It is conceded that the Russell had no lookout stationed on the tow of the barge which was the most forward point of the tug and her barge; nor for that matter was there any lookout stationed on the tug other than a deckhand who was standing in the pilot-house of the Russell, and her captain who was on deck tending lines. The district court excused the failure to have a lookout on the barge on the ground that any such failure "was not a fault which contributed in any way in bringing about the collision." This conclusion was based on the view of the court that the Russell had observed the Dover early enough to have avoided the collision were it not for the fault of the Dover in changing her course and disregarding the Russell's signals. But it is not apparent that the Russell was aware of the Dover's change of course, which was made in order to carry out the latter's contemplated port-

to-port passage, until the collision became unavoidable. The Russell, believing that the passage was to be starboard-to-starboard, turned into the Manhattan shore after having completed her swing around the Battery. The Dover must have changed her course toward the Manhattan shore before or at about the same time as did the Russell since the Dover's witnesses testified that the Dover made its starboard turn when the Russell's light was swinging to the Dover's port. The fact that the pilot of the Russell continued to believe that a starboard-to-starboard passage was to be made and continued her course to port indicates that he had not observed the Dover's change of course. If there had been a lookout on the bow of the barge he might have seen the change of course at the earliest moment and could have warned the pilot of the tug in time to have averted the collision. If the pilot did observe the Dover's change of course, he evidently did not realize the danger involved, for no effective action was taken aboard the Russell until the master, who was on the deck, observed the Dover sheering toward the Russell's tow and went to the wheelhouse where he ordered her engines astern and sounded the danger alarm—but not until it was too late. The pilot of the Russell did testify that he observed the Dover's change of course, but he merely slowed down to half speed, blew an alarm (which was not heard aboard the Dover) yet proceeded on his dangerous course.

In United States v. The Adrastus, 2 Cir., 190 F.2d 883, we held in an opinion by Judge Chase that the failure to maintain a lookout created a presumption of contributory fault which could only be overcome by proof that the neglect could not have contributed to the collision. See also Gulf Oil Corp. v. The Socony No. 16, 2 Cir., 162 F.2d 869. In the latter decision we held that it was the duty of the tug to maintain a lookout on the barge where conditions of navigation required it. In the case at bar we feel satisfied that the Russell failed to show that the absence of a lookout did not contribute to the collision and that therefore the decrees should be modified so as to divide damages between the United States as owner of the Dover and the tug J. Raymond Russell.

The decrees are modified accordingly and the United States is awarded the costs of this appeal.