**DWYER OIL TRANSPORT CO., Inc., as owner of THE Tank Barge DWYER, NO. 104, Libelant-Appellant,**

v.

**THE Tug EDNA M. MATTON, Matton Steamboat Co., Inc., Claimant-Appellant, and THE Tug CORPORAL, Tug Corporal Corporation, Claimant-Appellee.**

**B. NO. 80 CORPORATION, as owner of The Barge B. NO. 80, Libelant-Appellant,**

v.

**THE Tug EDNA M. MATTON, Matton Steamboat Co., Inc., Claimant-Appellant, and Tug Corporal, Tug Corporal Corporation, Claimant-Appellee.**

Nos. 310, 311, Dockets 24972, 24973.

United States Court of Appeals Second Circuit.

Argued April 30, 1958.

Decided May 20, 1958.

Thomas F. Daly, New York City (Macklin, Speer, Hanan & McKernan, New York City, on the brief), for Dwyer Oil Transport Co., Inc.

Frank C. Mason, New York City (Mahar & Mason and James J. Mason, New York City, on the brief), for Matton Steamboat Co., Inc.

Vincent A. Catoggio, New York City (Purdy, Lamb & Catoggio, New York City, on the brief), for Tug Corporal, Tug Corporal Corp.

Henry C. Eidenbach, New York City (Hagen & Eidenbach, New York City, on the brief), for B. No. 80 Corp.

Before CLARK, Chief Judge, and HINCKS and STEWART, Circuit Judges.

HINCKS, Circuit Judge.

This is an appeal in a collision case from interlocutory decrees holding Matton Steamboat Co., Inc. solely responsible for an accident through its tug Edna M. Matton, exonerating the Tug Corporal Corporation from any liability, and fixing liability on Matton for damage to two barges, viz., the Dwyer No. 104, which was being pushed by the tug Matton, and the B. No. 80, which was being pushed by the tug Corporal. Matton's sole contention is that the district court should have found the Corporal jointly liable for the damage.

The collision occurred in the New York State Barge Canal near midnight on August 6, 1955. The Matton was proceeding in a westerly direction and was approaching a bridge over a bend in the canal. The trial judge found, and it is not disputed, that it would have been imprudent for both vessels to have attempted to make a passing in the narrow bending channel beneath the bridge. He further found that the Corporal, moving in an easterly direction, properly blew a bend signal and had its searchlights in position to enable her to navigate under the bridge. On the other hand, it was found that the Matton did not blow a bend signal, had no lookout and, until the collision was imminent, was running with its searchlights off even though it had just come through a canal lock where it had been warned that three eastbound flotillas were in the vicinity. Just before the collision (two to three minutes before, according to Corporal's engineer) the Corporal reversed engines and began making sternway. The Matton did not reverse until five seconds before the collision, according to the testimony of its Master. The collision occurred between the respective bows of the two barges. The point of impact was a short distance east of the bridge—before the Matton reached the bridge.

Matton relies upon two grounds in its attempt to have the Corporal declared jointly liable for the collision. The first ground is that the Corporal violated the "Narrow Channel" Rule, which states: "In narrow channels every steam vessel shall, when it is safe and practicable, keep to that side of the fairway or mid-channel which lies on the starboard side of such vessel." Article 25, Inland Rules, 33 U.S.C.A. § 210. As to this, it is true that immediately prior to the collision the port bow of the B. No. 80, which was being pushed eastward by the Corporal, was 30 or 40 feet northerly of mid-channel. However, the judge found that this was not imprudent navigation of this particular bend. Each barge was over 40 feet wide and 200 feet long. The waterway between the bridge abutments was something over 90 feet wide. In view of the length and width of the flotillas, the nature of the bend, and the width of the channel between the abutments, it is impossible to say that that finding was clearly erroneous.

Appellant's second ground is based upon a violation of Article 29 of the Inland Rules, 33 U.S.C.A. § 221, which states in relevant part: "Nothing in these rules shall exonerate any vessel, or the owner or master or crew thereof,

from the consequences of any neglect * * * to keep a proper lookout * * ."

Although the district judge made no specific finding, the testimony of the Corporal's watchman on cross-examination clearly indicates that rather than standing in the front of the B. No. 80 and looking up the channel, he was sitting against a tank 40 feet from the bow of the barge and was watching the bank. This impresses us as being a clear violation of the above rule. In that situation the burden was upon the Corporal to prove that this statutory violation could not have contributed to the collision in any way. The Pennsylvania, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148; Poling Russell, Inc., v. United States, 2 Cir., 196 F.2d 939; Ira S. Bushey & Sons v. United States, 2 Cir., 172 F.2d 447. These cases place a severe burden upon the statutory violator. But that burden is not unbearable. National Bulk Carriers v. United States, 2 Cir., 183 F.2d 405, certiorari denied 340 U.S. 865, 71 S.Ct. 89, 95 L.Ed. 631; The William J. Riddle, D.C., 102 F.Supp. 884, affirmed United States v. United States Lines Co., 2 Cir., 200 F.2d 608.

In the case at bar the appellant specifically requested a finding of statutory violation and joint liability against the Corporal because of its ineffective lookout. The court's refusal so to find, in the light of his conclusions, must be taken as a determination that the statutory violation could not have played any part in the ultimate collision. We think, however, that on the record in this case such a finding would have been clearly erroneous. For the testimony of the Corporal's lookout and its pilot indicates that the Matton was spotted by both almost simultaneously when the bows of the two barges were only between 50 and 100 feet apart. Although the Matton did not have its searchlights on, it is undisputed that its running lights were in operation. In this state of facts, we think it clear that if the lookout had been alert at his proper station 220 feet forward of the Corporal's pilot as the B. No. 80 rounded the bend in the river,

the lookout should have seen the Matton a considerable time before it could have been observed by the Corporal's pilot.

We find nothing in the evidence which would have warranted a finding that, if seasonably informed of Matton's approach when the distance between the two barges was significantly greater than the 50 to 100 feet interval which separated them when the Matton was actually observed, the Corporal could not have averted the collision by reversing sooner. For present purposes we may assume that the Corporal was the privileged vessel since, if both flotillas continued at the same speed, the Corporal's barge would reach the bridge first. And we may further assume that when the pilot of a privileged vessel is informed of the approach of a burdened vessel the privileged vessel may be entitled to hold its course in the expectation that the burdened vessel will fulfill its navigational obligations. Nevertheless, "though privileged, he [the pilot of the privileged vessel] was not justified in keeping on beyond that point when the burdened vessel by her own efforts could no longer avoid collision." The Salutation, 2 Cir., 79 F.2d 609, 611. See also Ulster Oil Transport Corp. v. The Matton No. 20, 2 Cir., 210 F.2d 106, recognizing an obligation on the privileged vessel to reverse engines when the danger of collision is imminent. Thus if the Matton had been seen when the distance between the flotillas was greater—perhaps as much as 220 feet greater—and if in that situation the Corporal might properly have continued on for a time in the expectation that it would be allowed to pass the bridge first, as the flotillas approached each other there necessarily would have come a time when it became the duty of the Corporal to reverse. For aught that appears, a proper lookout on the Corporal could thus have caused her, by reversing sooner, to avert the collision.

We can only conclude that the Corporal did not sustain the burden of proof which, under the Pennsylvania rule, came

into play once her failure to maintain a proper lookout was established.

Our conclusion is indeed reluctantly made. The admiralty rule of equally dividing damages in property damage cases has been consistently criticized. e. g., Ahlgren v. Red Star Towing & Transp. Co., 2 Cir., 214 F.2d 618; Oriental Trading & Transport Co. v. Gulf Oil Corp., 2 Cir., 173 F.2d 108, 111, certiorari denied Gulf Oil Corp. v. M/V The John A. Brown, 337 U.S. 919, 69 S.Ct. 1162, 93 L.Ed. 1728; Gilmore and Black, The Law of Admiralty, 438 et seq. However, the Supreme Court has recently referred to the rule as "established admiralty doctrine," Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 284, 72 S.Ct. 277, 279, 96 L.Ed. 318, and we are obliged to apply the rule in this case despite the disproportionate degrees of fault disclosed.

The decree is modified to hold the Corporal jointly at fault with the Matton.