283 F.2d 754
 UNITED STATES of America, as owner of THE Barge BC-634 and
bailee of her cargo, Libelant-Appellee,
v.
THE Motor Tanker J. A. COBB, Diesel Tanker J. A. Cobb, Inc.,
Respondent-Appellant, and The Central Railroad
Company of New Jersey,
Respondent-Impleaded-Appellee.
 No. 39, Docket 25880.
 United States Court of Appeals Second Circuit.
 Argued Oct. 6, 1960.
Decided Oct. 31, 1960.
 
 John H. Hanrahan, Jr., New York City (Foley & Martin), New York City, for respondent-appellant.
 Louis E. Greco, attorney, Admiralty and Shipping Section, Department of Justice, Washington, D.C. (George Cochran Doub, Asst. Atty. Gen., S. Hazard Gillespie, Jr., U.S. Atty., New York City, Samuel D. Slade, Chief, Appellate Section, Civil Division, Department of Justice, Washington, D.C. Benjamin H. Berman, attorney in charge, New York Office, Admiralty and Shipping Section, Department of Justice, New York City, of counsel), for libelant-appellee.
 Vincent E. McGowan, New York City, for respondent-impleaded-appellee.
 Before HINCKS, WATERMAN and MOORE, Circuit Judges.
 MOORE, Circuit Judge.
 
 
 1
 Respondent-Appellant, M/T J. A. Cobb, her engines, etc. (referred to as the 'Cobb') appeals from an interlocutory decree awarding damages to Libelant-Appellee, United States of America, as owner of the barge BC-634 (referred to as the BC-634), and dismissing the petition of the Cobb impleading the Respondent-Impleaded-Appellee, The Central Railroad of New Jersey (referred to as the 'Central').
 
 
 2
 The damages were sustained as a result of a collision between the Cobb and the BC-634 which was one of three barges being towed by the Army tug, Major General Harry L. Rogers (referred to as the 'Rogers'). The collision occurred shortly before 10:00 P.M. (DST) on July 28, 1954, in or near the west draw of the Central's bridge across Newark Bay.
 
 
 3
 The trial court found the Cobb to be 'negligent and solely responsible for the collision' and that neither the Rogers nor the Central were chargeable with negligence. The findings of fact are adequately supported by the proof. Therefore, only the errors of law asserted by the Cobb need be considered.
 
 
 4
 The Cobb argues that the Rogers was proceeding on the wrong side of a narrow channel. The Central's bridge was of the 'lift' type. There are two channels, the east-- 134 feet in width, and the west-- 216 feet in width. A center abutment 200 feet in width separates the channels. For years it had been the custom for large vessels and tows proceeding both north and south to use the broader west draw. Under the circumstances and as a practical matter, it would not be reasonable to merge the east and west channels into, and denominate them as, a single narrow channel or to require all northbound traffic to use the east draw. The Narrow Channel Rule (33 U.S.C.A. 210, Inland Rules, Art. 25) required the Rogers to keep to the starboard side of the west draw channel. This it did. The facts do not support the arguemnt that the Rogers was negligent as a matter of law in not proceeding through the narrower east draw or that the Central was also negligent in not lifting the east bridge.
 
 
 5
 The trial court found that 'The Cobb's failure to have a proper lookout stationed at the bow of the vessel, 150 feet forward of the pilothouse, was, under the existing circumstances, lack of prudent seamanship.' (182 F.Supp. 241) This finding is not only supported by Article 29 Inland Rules (33 U.S.C.A. 221) but also by the particular situation confronting the Cobb. If, as the Cobb argues, the abutment concealed northbound traffic, it would have been of great importance to have a lookout on the bow, 150 feet forward of the pilothouse to give warning of approaching vessels to tows, and the evidence supports a finding that the failure to have a forward lookout contributed to the accident. Under similar circumstances, absence of a proper lookout as constituting negligence has been continuously stressed by the courts (The Oregon, 1895, 158 U.S. 186, 15 S.Ct. 804, 39 L.Ed. 943; Poling Russell, Inc. v. United States, 2 Cir., 1952, 196 F.2d 939; The Manchioneal, 2 Cir., 1917, 243 F. 801).
 
 
 6
 Despite its claim that the Rogers was 'hiding' behind the abutment and improperly in the west draw, the fact is undisputed that the Cobb saw the Rogers in time to give a one-blast signal indicating a port-to-port passing. The Rogers by its one-blast agreed. The Cobb must have believed such a passage feasible on its port, otherwise it should not have indicated this course. Had it been convinced that a collision was likely when the Rogers was first sighted, the danger signal, full speed astern, or other averting action would have been called for. Although calculations after the event should be advanced with caution and with full regard to the wisdom of hindsight, there should have been enough space to carry out the Cobb's signal. Even assuming a passage in the draw itself, there were 216 feet. The Rogers and its barges were 93 feet in width, the Cobb was 30 feet. The Rogers was fairly close to the easterly side of the channel. There should have been adequate space. However, were cold figures and paper calculations to be the sole test, they might often lead to the belief that the accident never happened. The sinking of the BC-634 refutes this conclusion. Carefully weighing the various factors which should enter into assessing fault, the trial court reached the correct result.
 
 
 7
 The interlocutory decree is affirmed.