## NEW YORK MARINE CO. v. MULLIGAN et al.

Circuit Court of Appeals, Second Circuit.
March 18, 1929.

No. 147.

Haight, Smith, Griffin & Deming, of New York City (Henry M. Hewitt and James Mc-Kown, Jr., both of New York City, of counsel), for appellant Merritt-Chapman & Scott Corporation.

John R. McMullen and Macklin, Brown, Lenahan & Speer, all of New York City (Horace L. Cheyney and J. D. Eggleston, both of New York City, of counsel), for John G. Mulligan, respondent appellee.

Frederick W. Park, of New York City, for New York Marine Company, libelant appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above). ■ Mulligan, as owner of the scow, had complied with the statute by notifying the Lighthouse Department to mark the wreck, so that he was rightly freed from any liability. The Plymouth (C. C. A.) 225 F. 483; Red Star Towing & Transportation Co. v. Woodburn (C. C. A.) 18 F.(2d) 77. The only question is as to the liability of Merritt-Chapman & Scott Corporation.

■ The contract of the wrecking company to raise the scow was personal, and the failure to continue to perform it when the scow went adrift was a matter in which no one but Mulligan was concerned. If the wrecking company had had no contractual obligation to Mulligan, and the Century had merely caught her bow anchor on the submerged scow while heaving anchor to get under way, it could not be° seriously contended that the wrecking company was under any duty to. mark the wreck, or to stand by, or to raise the scow. But, because there was a contract, libelant seeks to create a tort out of the accidental contact of the anchor with the scow. We can find no basis for this theory of liability.

If there is to be a liability, it must be because a wrecking vessel, having once partially raised the scow, owed a duty to navigation to get her out of the channel. Such a theory involves heavy obligations on the part of one who appeared to be under no duty, other than to abstain from affirmative acts of negligence which would result in foreseeable damage to others.

■ Even if the Century actually cast adrift the scow, which had fouled her anchor, libelant cannot prevail. If she did this, as we cannot believe, it is hard to see how such a thing made matters worse. The scow had already drifted a considerable distance from the spar buoy. The mark placed by the Lighthouse Department had ceased 'to be effectual, and, wherever in the channel the scow sank, it was no more dangerous to navigation than before. It may be argued that the partial raising had partially emptied the sand pockets, so that the scow was a greater menace than before, because it would float nearer the surface. But it had sunk out of sight, and the Century had no reason to believe that it was not as far down in the water as before it slid off her anchor. Nor can it be said that the Century moved the scow from a safe place to one that was more dangerous to navigation, or from a position marked by a buoy to one that was not. The original buoy was too far from the location where the barge was found to be of any service, and the captain of the Dalzelline marked the wreck, so far as was practicable, after the Century left and before the collision.

Libelant can only prevail if the Century was bound to search for the scow, which by chance had fouled her anchor, until she found it, and then to remove it from the channel. To find the scow, the Lighthouse Department searched the whole day succeeding the accident, without success. Such is the burdensome duty to the public that libelant seeks to impose upon the wrecking company, merely because it had a contract with Mulligan and the anchor of the Century by chance came in contact with the scow. We know of no such duty, and accordingly hold that the wrecking company was not at fault.

The decree against Merritt-Chapman & Scott Corporation is reversed, and the libel dismissed.