**INLAND TUGS COMPANY and American Barge Line Co., Plaintiffs-Appellees, Plaintiffs-Appellants,**

v.

**The OHIO RIVER COMPANY, Defendant-Third Party Plaintiff-Appellant,**

**and**

**United States of America, Defendant-Third Party Defendant-Appellee.**

**Nos. 81–5742, 81–5808.**

United States Court of Appeals, Sixth Circuit.

Argued March 9, 1983.

Decided June 8, 1983.

William P. Schroeder (argued), Rendigs, Fry, Kiely & Dennis, Cincinnati, Ohio, W. Scott Miller, Jr., Miller & Miller, Louisville, Ky., for Ohio River Co.

John K. Gordinier (argued), Wallace, Rice & Gordinier, Louisville, Ky., for Inland Tugs, et al.

Alexander Taft, U.S. Atty., Hancy Jones, III, Asst. U.S. Atty., Louisville, Ky., Thomas L. Jones (argued), Trial Atty., Torts Branch, U.S. Dept. of Justice, Washington, D.C., for U.S.

Before EDWARDS, Chief Circuit Judge, KRUPANSKY, Circuit Judge, and SWYGERT, Circuit Judge.*

KRUPANSKY, Circuit Judge.

This admiralty action joins legal inquiry into the Coast Guard's exposure to liability, either primary or secondary, for injuries and damages resulting from its failure to mark a privately owned and non-abandoned sunken vessel. On October 24, 1978, Barge OR–39, while in tow of the M/V Pat Chotin, sank for reasons unknown in the navigable channel of the Ohio River at Mile 769.4; both Barge OR–39 and its towing vessel were owned and operated by the

---

* Honorable Luther M. Swygert, United States Court of Appeals for the Seventh Circuit, sitting by designation.

Ohio River Company. On that same date the sunken barge was located and marked with a red aid to navigation buoy with the letters WR and attached light by the United States Coast Guard buoy tender Chippawa at the request of Ohio River Company. On October 26, 1978, the services of Owensboro Harbor Service were engaged by Ohio River Company to monitor and verify the position of the buoy marking Barge OR–39 twice daily until salvage operations could be initiated. These services were performed until November 15 at which time Columbia Marina Services commenced salvage operations. By November 28, 1978 substantially all of the cargo had been removed from the barge although it had not been refloated. Inclement weather and river conditions caused the salvage operation to be suspended.

At a date between December 10, 1978, the last date upon which the salvors visually observed the location of the sunken barge, and December 26, 1978, the Coast Guard buoy marking the site of the sunken hulk was carried off-station. The Ohio River Company owned marking buoys and other marking aids to navigation which were available within the geographical vicinity of the sunken barge and it could have re-marked the barge within several hours after having received notice that the original buoy had been carried off its station. On December 26, 1978, the Company, instead of relocating the buoy marking its wreck, elected to inform the Coast Guard at Owensboro, Kentucky that Barge OR–39 was no longer buoyed. The following day, December 27, 1978, the Coast Guard advised Ohio River Company that the barge would be re-buoyed no later than the morning of December 28, 1978, and further represented that Ohio River Company would be contacted if circumstances warranted. Ohio River Company made no further efforts to insure the marking of the sunken barge or to determine if the Coast Guard had in fact re-buoyed the wreck.

The Coast Guard never reset the buoy. Rather, from its erroneous mathematical computations, it determined that, although the river was falling, approximately 25 feet of clearance existed between the barge and the surface of the river which afforded sufficient clearance for typical vessels with maximum drafts of 9 feet to safely traverse the area where the hulk of Barge OR–39 rested on the bottom of the river. The actual water clearance between the wreck and the river's surface was, however, less than 9.5 feet. The Coast Guard did not advise the Ohio River Company of its election to defer marking the wreck.

The tug M/V Owen Childress, owned by the Inland Tugs Company, operated a regular run which traversed the river in the area of the sunken barge on an average of every two days. Its pilot, DeWayne McCreery (McCreery), and regular captain, Louis Enlow (Enlow), were aware of the sunken barge and had circumnavigated the wreck approximately 30 times between October 24, 1978, the date upon which the barge sank, and December 31, 1978. On December 27, 1978 when the Owen Childress was passing the wreck, McCreery observed that the Coast Guard buoy was no longer on station. This information was conveyed to Enlow. On December 28 relief captain Robert Haynes (Haynes) boarded the Owen Childress to relieve captain Enlow. Haynes had last circumnavigated the sunken barge approximately 30 days earlier at which time the marking buoy for the sunken barge had been on station. On December 28 neither McCreery nor Enlow notified Haynes that the wreck lay unmarked although both were afforded ample opportunity to do so. At approximately 7:00 a.m. on December 31, 1978, the Owen Childress, with 14 empty barges in tow, was downwind from Madison, Indiana under the command of Haynes. As Haynes approached the area where he remembered the wreck to be positioned with his tow of 14 empty barges ahead of his vessel, he proceeded to push his tow down river on the assumption that the sunken barge was still buoyed at the position he remembered it to be. Since it was just beginning to break day and the visibility was limited by haze and fog, he backed his engines to lose headway, disengaged the engines and proceeded to float

downstream with the current estimated to be at 4 to 5 m.p.h. while visually probing the river ahead for the marking buoy via radar and carbon searchlights. It was during this maneuver that the Owen Childress struck the unmarked wreck and sank with the loss of life to Albert Vandenabeele.

Inland Tugs Company initiated this admiralty action against the Ohio River Company for damages resulting from the loss of the Owen Childress. Ohio River Company filed a third-party complaint against the United States seeking indemnity as predicated upon the Coast Guard's negligent conduct in failing to mark the barge. Inland Tugs Company, by amended complaint, also asserted a similar cause of action against the United States. The district court, *sua sponte,* concluded that the record failed to join a cognizable cause of action against the United States and entered summary judgment accordingly. Following trial, Ohio River Company was adjudged to have been solely liable for the collision, and was assessed damages of $1.3 million. Both Inland Tugs Company and Ohio River Company appealed from the district court's entry of summary judgment in favor of the United States. Ohio River Company further appealed the entry of final judgment.

The Wreck Act, 33 U.S.C. 409 (1899),[1] charges the owner of a sunken vessel with the duty to immediately secure and maintain a marking and diligently prosecute removal of the wreck:

> * * * And whenever a vessel, raft, or other craft is wrecked and sunk in a navigable channel, accidentally or otherwise, it shall be the duty of the owner of such sunken craft to immediately mark it with a buoy or beacon during the day and a lighted lantern at night, and to maintain such marks until the sunken craft is

removed or abandoned, and the neglect or failure of the said owner so to do shall be unlawful; and it shall be the duty of the owner of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently. . .

The marking mandates a lateral system of buoyage established by regulations[2] and failure to discharge Wreck Act obligations exposes the owner to liability for resulting damage to the public.[3]

Ohio River Company submits that it was relieved of its Wreck Act obligation *to mark* the sunken barge when the Coast Guard on October 24, 1978 exercised its discretion to secure a marking under 14 U.S.C. § 86 which pertinently provides:

> § 86. *Marking of obstruction.*
>
> The Secretary may mark for the protection of navigation any sunken vessel or other obstruction existing on the navigable waters . . . in such manner and for so long as, in his judgment, the needs of maritime navigation require. The owner of such an obstruction shall be liable to the United States for the cost of such marking until such time as the obstruction is removed or its abandonment legally established or until such earlier time as the Secretary may determine. * * * This section shall not be construed so as to relieve the owner of any such obstruction from the duty and responsibility suitably to mark the same and remove it as required by law.

Ohio River Company argues that (1) its Wreck Act duty to mark was replaced with a duty to reimburse the United States for expenditures and (2) it was statutorily precluded from establishing its own independent marking by the dictates of 14 U.S.C. §§ 83[4] and 84[5] which foreclose private en-

---

1. Although the Wreck Act is a criminal statute, it is also recognized as establishing the standard of care defining civil liability. *Morania Barge No. 140, Inc. v. M. & J. Tracy, Inc.,* 312 F.2d 78 (2d Cir.1962).

2. 33 C.F.R. 64.01–5

3. 33 C.F.R. 64.01–1(a)

4. 14 U.S.C. § 83 *Unauthorized aids to maritime navigation; penalty*

No person, or public body, or instrumentality, excluding the armed services, shall establish, erect or maintain any aid to maritime navigation in or adjacent to the waters subject to the jurisdiction of the United States . . . without first obtaining authority to do so from the Coast Guard in accordance with applicable regulations . . .

5. 14 U.S.C. § 84 *Interference with aids to navigation; penalty*

tities from interfering with aids to navigation effected by the Coast Guard. *See, e.g.: The Plymouth,* 225 F. 483, 484–85 (2d Cir. 1915), *cert. denied, sub nom. LeHigh & Wilkesbarre Coal Co. v. Hartford & New York Transportation Co.,* 241 U.S. 675, 36 S.Ct. 725, 60 L.Ed. 1232 (1916) (The owner "could not have moved the [Coast Guard] buoy or interferred with it in any way, whether it thought it properly placed or not, and if [the owner] had itself buoyed the wreck the [Coast Guard] ... could have changed the location of the buoy or replaced it with another"); *Berwind-White Coal Mining Co. v. Pitney,* 187 F.2d 665, 669 (2d Cir.1951) ("the private owner cannot interfere with the manner in which the government agency uses its discretion in the manner of marking").

Ohio River Company further asserts that it was relieved of its Wreck Act obligation to *maintain* the Coast Guard marking since the latter was charged under 14 U.S.C. § 2 with the statutory responsibility to maintain all aids to navigation including discretionarily established wreck buoys:

14 U.S.C. § 2. *Primary duties.*

The Coast Guard shall * * * develop, establish, maintain and operate, with due regard to the requirements of national defense, aids to maritime navigation, icebreaking facilities, and rescue facilities for the promotion of safety on, under and over the high seas and waters subject to the jurisdiction of the United States * *

■ Admiralty has firmly embraced the doctrine that "there is no divided responsibility" to mark a privately owned, non-abandoned wreck, and "if the statute is to be effectual, there cannot be". *The Anna M. Fahy,* 153 F. 866, 868 (2d Cir.1907).. *See also: The R.J. Moran,* 299 F. 500, 503 (2d Cir.1924); *Red Star Towing & Transportation Co. v. Woodburn,* 18 F.2d 77, 79 (2d Cir.1927). Rather, "the duty to properly mark under the Wreck Act is non-delega-

ble." *Ingram Corp. v. Ohio River Company,* 505 F.2d 1364, 1371 (6th Cir.1974). In particular, the federal forum has consistently resisted vessel owners' efforts to impute legal responsibility to mark upon a tortfeasor causing the vessel to sink. *The Anna M. Fahy, supra; The R.J. Moran, supra; Red Star Towing & Transportation Co., supra; Lowery v. The Ellen S. Bouchard,* 128 F.Supp. 16 (N.D.N.Y.1955), *aff'd* 229 F.2d 436 (2d Cir.1956); *Nunley v. M/V. Dauntless Colocotronis,* 513 F.Supp. 720 (E.D.La.1981), *rev., Nunley v. M/V Dauntless Colocotronis,* 696 F.2d 1141 (5th Cir. 1983), *circuit decision vacated,* 696 F.2d at 1149 (5th Cir.1983) (en banc review pending). It is also recognized that conduct exercised by an owner's agent is imputed to the owner. In the *Anna M. Fahy, supra,* the owner requested an agent to mark its sunken vessel at 4:00 p.m. The marking had not been secured by 6:00 p.m. of the same day when the wreck was struck:

[T]he negligence in failing to act until after 6 o'clock was that of the wrecking company, but its fault in this regard must be imputed to the claimant. The law placed the duty of marking the wreck upon him and he cannot escape responsibility by delegating it to others. The Merritt-Chapman Company was his agent and he is responsible for its act and omissions.

153 F. at 867. *Accord: Petition of Anthony O'Boyle,* 161 F.2d 966, 968 (2d Cir.1947) ("the agent's delay in marking the wreck would be imputed to the owner of the wreck") (dictum).

■ Section 86 authorizes the Coast Guard to exercise discretion to mark a wreck upon request by a vessel's owner. However, this very promulgation which permits an owner to seek Coast Guard assistance also unequivocally forewarns the owner that its Wreck Act obligations may not be abdicated by electing use of this

---

It shall be unlawful for any person, or public body, or instrumentality, excluding the armed forces, to remove, change the location of, obstruct, wilfully damage, make fast to, or interfere with any aid to navigation established, installed, operated, or maintained by the Coast Guard pursuant to section 81 of this title, or with any aid to navigation lawfully maintained under authority granted by the Coast Guard pursuant to section 83 of this title ...

alternative method of securing a marking:

14 U.S.C. § 86. *Marking of Obstructions.*

* * * This section shall not be construed so as to relieve the owner of any such obstruction from the duty and responsibility suitably to mark the same and remove it as required by law.

Actual marking of a wreck by the Coast Guard does not relieve the owner of its duty to mark:

33 C.F.R. § 64.01–1 *General.*

(b) The Coast Guard is authorized to mark for the protection of navigation any sunken vessel or other obstruction that is not suitably marked. *Marking* by the Coast Guard does not relieve the owner of any such obstruction from the *duty* and responsibility suitably *to mark* the obstruction and remove it as required by law. (emphasis added).

Congress has, without equivocation, identified the private owner of a non-abandoned wreck, and no other, as charged with the obligation to mark its obstruction. While authorizing the owner to seek assistance from any source including the Coast Guard, Congress has concurrently manifested an intent that such assistance, if received, fails to vitiate any of the owner's Wreck Act responsibilities. Accordingly, this Court rejects Ohio River Company's argument that the Coast Guard's initial marking of the wreck accomplished on October 24, 1978 relieved appellant Ohio River Company of its continuing duty to insure and maintain that mark.

Ohio River Company was charged on October 24, 1978, the date upon which its barge sank, with immediately securing a mark over the wreck. This was initially accomplished through the Coast Guard. The discretionary assistance of the Coast Guard in no way relieved Ohio River Company of its continuing Wreck Act obligation to insure and *maintain* the mark on position. This duty to insure and maintain a suitable marking continued throughout the period here in issue including December 26, 1978, when Ohio River Company became aware that the Coast Guard buoy had been carried off-station and thereafter until the wreck was removed or legally abandoned. Accordingly, on December 26, 1978, Ohio River Company had a continuing duty pursuant to the Wreck Act to immediately re-mark the obstruction and maintain this second buoy.

In considering the district court's finding that Ohio River Company failed to discharge its obligations in a non-negligent manner, this Court's appellate review is circumscribed by the clearly erroneous rule. *See: In re Paducah Towing Company,* 692 F.2d 412 (6th Cir.1982) (the clearly erroneous test applies to findings of negligence if the district court has properly defined the required standard of care to be applied in evaluating the conduct of the parties). The concern of Ohio River Company, if any, to conscientiously satisfy its continuing responsibilities imposed by the Wreck Act on and after December 26, 1978, the date when it was noticed that its wreck was no longer marked, reflected, at best, an indifference and, at worst, a disregard for those obligations. Although fully capable of independently and promptly buoying its sunken barge on December 26, 1978, Ohio River Company instead sought to delegate its statutory obligation to the Coast Guard by securing a representation to re-mark from the Coast Guard. In *Ingram Corporation v. Ohio River Co.,* 505 F.2d 1364, 1371 (6th Cir.1974), this Circuit succinctly enunciated the responsibilities of the vessel owner imposed by the Wreck Act in unmistakable terms

it is consistent with the rule that the duty to properly mark under the Wreck Act is *non-delegable*

thereby expressly rejecting those authorities which have embraced or acknowledged the proposition that compliance by an owner with the Wreck Act requirements for marking may be satisfied by either requesting or securing a marking by the Coast Guard. *See: The Plymouth,* 225 F. 483 (2d Cir.1915), *cert. denied sub nom.; Lehigh & Wilkesbarre Coal Co. v. Hartford & New York Transportation Co.* 241 U.S. 675, 36 S.Ct. 725, 60 L.Ed. 1232 (1916); *Red Star*

*Towing & Transportation Co. v. Woodburn,* 18 F.2d 77 (2d Cir.1927) (dictum); *Petition of Anthony O'Boyle, Inc.,* 161 F.2d 966 (2d Cir.1947); *New York Marine Co. v. Mulligan,* 31 F.2d 532 (2d Cir.1929); *Berwind-White Coal Mining Co. v. Pitney,* 187 F.2d 665 (2d Cir.1951). *See also: Humble Oil & Refining Co. v. The Tug Crochet,* 422 F.2d 602 (5th Cir.1970) (affirming the district court's finding that the United States was not negligent in maintaining a wreck mark and thereby implicitly acknowledging, without expressly addressing, the cognizability of an action against the United States). Congressional identification of the vessel's owner, and no other, as charged with the marking of its wreck until the obstruction is removed or until its abandonment is legally accomplished, compels the conclusion that the duties to mark and maintain the mark are non-delegable, non-imputable duties *which cannot be assigned* to or assumed, to the absolution of the owner from liability, by *any* third party including the United States.[6] Accordingly, the Coast Guard's representation of December 27, 1978, that a marking would be secured no later than the morning of December 28, 1978, did not relieve Ohio River Company of its Wreck Act duties. Ohio River Company expressed no exception to the Coast Guard's warning that the buoy could not be immediately re-positioned. *Five days* elapsed from the date upon which Ohio River Company was noticed that its wreck was unbuoyed (December 26) and the date upon which the submerged wreck was struck by the Owen Childress (December 31). Its failure to secure a mark within this five day interim can be construed as nothing less than gross negligence. *See: Ingram, supra* (negligence attached for failure to secure a mark within 33 hours); *The Anna M. Fahy, supra* (10 hours).

Moreover, even if Ohio River Company could have reasonably believed that the Coast Guard had indeed secured a mark as the Company had requested, it was grossly negligent in its failure to "maintain" that mark. The duty to maintain includes, at a minimum, an obligation to monitor and insure an existing mark in a reasonable manner. As the Fifth Circuit has observed,

> Common sense and regulations tell even landlubbers that floating aids to navigation are liable to be carried away or disabled through natural causes or accidents and are not as reliable as shore-based navigation aids.

*Humble Oil & Refining Co. v. The Tug Crochet,* 422 F.2d 602, 606 (5th Cir.1970). Ohio River Company's failure to verify that the Coast Guard had fulfilled its representation to mark, and the Company's failure to even once during a five day period visit the wreck scene to determine if the buoy which supposedly marked the wreck was on station, constituted negligence under the Wreck Act.

To avoid its absolute obligations arising pursuant to the Wreck Act, Ohio River Company was burdened to prove that its statutory violations did not and could not have caused the collision. *The Pennsylvania,* 86 U.S. (19 Wall.) 125, 136, 22 L.Ed. 148 (1873). *See also: Ison v. Roof,* 698 F.2d 294 (6th Cir.1983). The strict rule of *The Pennsylvania* applies to Wreck Act violations since said Act "was obviously intended to prevent obstructions in the Nation's waterways", *Wyandotte Transportation Co. v. United States,* 389 U.S. 191, 201, 88 S.Ct. 379, 385, 19 L.Ed.2d 407 (1967) (referring to the Rivers and Harbors Act of 1899), and

---

**6.** Although an owner may not impute or delegate its Wreck Act obligations to any third party, this does not imply *ipso facto* that a third party in appropriate circumstances may not be charged with an independent legal duty to mark the wreck. As the Second Circuit has observed:

> We do not intend to hold that conditions may not arise where a duty is imposed upon a tug [original tortfeasor] to mark a wreck caused by her negligence. It may well be, where all representatives of the owner are drowned or where communication with him is impossible from any cause, that a duty rests upon the tug to mark the wreck. No such situation arises in the case a bar.

*The Anna M. Fahy,* 153 F. 866, 868 (2d Cir. 1907).

thereby prevent navigable collisions. *Allied Chemical Corp. v. Hess Tankship Co. v. Delaware,* 661 F.2d 1044, 1060 (5th Cir. 1981). Lack of a buoy on the sunken barge not only caused the collision but appears to have been the sole cause of the collision. Captain Haynes of the Owen Childress permitted his vessel to float with the current while he visually searched via radar and carbon searchlights for the buoy which he believed marked the wreck. The record supports the conclusion that the presence of a buoy would have permitted Haynes to timely alter the course of the Owen Childress and its empty barges to avert the collision.

Accordingly, the district court's conclusions that Ohio River Company had been charged with Wreck Act obligations on the date of the collision, and that those responsibilities had been negligently discharged, are not clearly erroneous and must therefore be affirmed.

Both Ohio River Company and Inland Tugs Company on appeal charged the Coast Guard with a duty, distinct from Ohio River Company's responsibilities arising under the Wreck Act, to maintain all aids to navigation in a non-negligent manner including the wreck buoy which had been initially positioned by the Coast Guard on October 24, 1978 citing to the precedent of *Indian Towing Company v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). Therein the Coast Guard had positioned a lighthouse in which the light failed to the detriment of a vessel which had come to rely upon the beacon light as a permanent aid to navigation:

> The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light on Chandeleur Island and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order; and, if the light did become extinguished, then the Coast Guard was further obligated to use due care to discover this fact and to repair the light or give warning that it was not

functioning. If the Coast Guard failed in its duty and damage was thereby caused to petitioners, the United States is liable under the Tort Claims Act.

350 U.S. at 69, 76 S.Ct. at 126–27. The circuit courts have acknowledged *Indian Towing* negligence principles in a myriad of contexts other than fact situations arising from responsibilities imputed by the Wreck Act. *See: Greer v. United States,* 505 F.2d 90 (5th Cir.1974) (insufficient weight caused jetty buoy to drift); *Chute v. United States,* 610 F.2d 7 (1st Cir.), *cert. denied,* 446 U.S. 936, 100 S.Ct. 2155, 64 L.Ed.2d 789 (1979); *Magno v. Corros,* 630 F.2d 224 (4th Cir.), *cert. denied,* 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1980); *Afran Transport Co. v. United States,* 435 F.2d 213 (2d Cir.1970), *cert. denied,* 404 U.S. 872, 92 S.Ct. 72, 30 L.Ed.2d 116 (1971); (buoy not maintained on its charted position); *Bearce v. United States,* 614 F.2d 556 (7th Cir.), *cert. denied,* 449 U.S. 837, 101 S.Ct. 112, 66 L.Ed.2d 44 (1980). *See also: Somerset Seafood Co. v. United States,* 193 F.2d 631 (4th Cir.1951) (a pre-*Indian Towing* decision). *Indian Towing* is factually and legally distinguishable from the case at bar in that therein the Coast Guard positioned a lighthouse to mark the shoreline, intending a permanent aid to navigation. The legal responsibility to place or position and maintain aids to navigation permanent in duration is delegated to the discretion of the Coast Guard to the exclusion of all others. *See* 14 U.S.C. § 83 as implemented by 33 C.F.R. § 66.01 *et seq.*

The Wreck Act, on the other hand, equally explicitly contemplated the positioning and the maintaining of a mark (an aid to navigation) temporary in duration. The language of 33 U.S.C. § 409 permits no other conclusion:

> \* \* \* and whenever a vessel, raft, or other craft is wrecked and sunk in a navigable channel, accidentally or otherwise, it shall be the duty of the owner of such sunken craft *to immediately mark it . . . and to maintain such mark until the sunken craft is removed or abandoned . . .*

■ This distinction is implicitly recognized by *Indian Towing* and its progeny which, without exception, address fact situations involving permanent hazards to navigation, not situations arising within the relatively temporary time frame envisioned by the Wreck Act. The Wreck Act is a congressional exception to 14 U.S.C. § 83 which vests the placing and maintaining of navigational aids within the exclusive domain of the Coast Guard. Since the Coast Guard is not charged with a legal duty to either mark a wreck or maintain such a mark under the Wreck Act, no liability can attach for breach of a duty which does not exist.

Ohio River Company also charges contributory negligence on behalf of Inland Tugs Company predicated upon (1) failure of McCreery and Enlow to inform relief Captain Haynes that Barge OR-39 lay submerged and un-buoyed and (2) failure to maintain a proper lookout. Although the rule of *The Pennsylvania* has been applied to Ohio River Company in the action *sub judice,* such does not preclude a finding that the Inland Tugs Company was contributorily negligent. *See: Ison v. Roof,* 698 F.2d 294 (6th Cir.1983); *First National Bank of Chicago v. Material Service Corp.,* 597 F.2d 1110 (7th Cir.1979). Further, it is well-settled that contributory negligence may result from a failure to maintain a sufficient and proper lookout. *New York v. Baltimore & Ohio R.R.,* 236 F.2d 228 (2d Cir. 1956); *Gulf Oil Corp. v. The Socony,* 162 F.2d 869 (2d Cir.1947); *Bunge Corp. v. M/V Furness Bridge,* 558 F.2d 790 (5th Cir.), cert. denied, 435 U.S. 924, 98 S.Ct. 1488, 55 L.Ed.2d 517 (1977); *First National Bank of Chicago, supra; Poling Russell v. United States,* 196 F.2d 939 (2d Cir.1952); *Curtis Bay Towing Co. v. Sadowski,* 247 F.2d 422 (4th Cir.1957); *Smith v. Bacon,* 194 F.2d 203 (5th Cir.1952).

■ As aforenoted, on December 27, 1978, the Owen Childress had successfully navigated the waters wherein the sunken barge rested on the river bottom and pilot McCreery on that date had observed that the wreck was no longer buoyed. Although this information was conveyed to Captain Enlow, neither officer advised relief Captain Haynes who assumed command on December 28, 1978 and who was at the helm of the Owen Childress when the collision occurred on December 31, 1978. It is submitted that Inland Tugs Company, either through its home office or through Enlow or McCreery, was charged with the duty to convey to Haynes information within their knowledge of a potential hazard to navigation. *Protection Maritime Insurance Co. Ltd. v. United States,* 496 F.2d 4 (6th Cir. 1974); *Coyle Lines v. United States,* 195 F.2d 737 (5th Cir.1952). It cannot be argued that a breach of that duty proximately caused or contributed to the collision which could have been averted by circumnavigating the middle of the river where the submerged barge was lodged. Assuming, without deciding, that the knowledge of McCreery and Enlow could have been imputed to Haynes on December 28, 1978, this Court nevertheless concludes that on December 31, 1978, three days later, Haynes possessed the reasonable right to expect Ohio River Company to have satisfied its lawful duty under the Wreck Act, namely, to immediately re-mark the wreck. *See: The Anna M. Fahy,* 153 F. 866, 868 (2d Cir.1907) ("the tugs [original tortfeasor] were justified in assuming that the duty imposed by statute upon the owner would be performed"). Accordingly, Inland Tugs Company may be adjudged contributorily negligent only to the extent that its conduct could have been construed as negligent had Barge OR–39 been buoyed. The trial court, viewing the circumstances confronting Captain Haynes during the early morning of December 31, 1978 as he approached the area where he recalled the wreck to be submerged through the fog and haze, concluded that Haynes's action in backing the engines of Owen Childress to lose headway of the tow forward of his tug and floating downstream with the current estimated at 4 to 5 m.p.h., with the engine disengaged while visually probing the river ahead for the marking buoy with radar and carbon searchlights, constituted prudent action under the circumstances. Accordingly, this

Court affirms the district court's judgment to the extent that it absolved Inland Tugs Company of contributory negligence as not clearly erroneous.

In considering the issue of damages, it is equally well-settled that in admiralty, as in civil cases, the district court's factual findings must be affirmed unless they are clearly erroneous. *Gemp v. U.S.,* 684 F.2d 404 (6th Cir.1982); *Kinsman Marine Transport Co. v. Great Lakes Towing Co.,* 532 F.2d 1073 (6th Cir.1976). The burden is upon Ohio River Company, as appellant, to demonstrate clear error. *McAllister v. U.S.,* 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954); *Gradmann & Holler GMBH v. Continental Lines, S.A.,* 679 F.2d 272 (1st Cir.1982); *Utzinger v. U.S.,* 432 F.2d 485 (6th Cir.1970).

■ Ohio River Company challenges the amount awarded for Inland's salvage contract by citing to testimony which allegedly contradicts the award. Since the district court's decision was based on its evaluation of voluminous evidence the appellant may not meet the strict burden requisite to overturn the award below by extracting self-serving and selective portions of the record. Reviewing the record in its entirety, this Court concludes that the trial court's findings concerning the salvage contract were not clearly erroneous and are therefore affirmed. *Federal Ins. Co. v. S.S. Royalton,* 312 F.2d 671 (6th Cir.1963).

■ The Ohio River Company further asserts the trial court's calculation assessing a charge of $75.00 per barge day in favor of Inland Tugs' use of its own equipment during the salvage operation was arbitrary and erroneous. The amount awarded was calculated by reducing Inland's normal daily rate fifty percent. Although the record demonstrates that, even at this reduced rate, Inland Tugs still realized a fifty-eight percent profit over its costs, a profit margin alone is not sufficient to demonstrate clear error or arbitrary action. *Gemp v. U.S., supra.*

■ Ohio River Company disputes the lower court's valuation of the fair market value of the vessel M/V Owen Childress. Where the loss of a vessel is, as here, total,

the measure of damage is the vessel's fair market value on the date of the loss, less its salvage value. *See: Orange Beach Water, Sewer and Fire Protection Authority v. M/V Alva,* 680 F.2d 1374 (11th Cir.1982); *Greer v. U.S.,* 505 F.2d 90 (5th Cir.1974). *See also: The Baltimore,* 75 U.S. (8 Wall.) 377, 19 L.Ed. 463 (1869).

■ Upon the evidence presented, the district court valued the vessel at $1,088,000 on the date of the loss and reduced that amount to $1,050,000, the price assigned to the Owen Childress by Inland Tugs as its sale price prior to the accident. Deducting the salvage value for the Owen Childress in the amount of $250,000, the trial court awarded the amount of $800,000 as the value of the vessel. The clearly erroneous rule of appellate review is equally applicable to the trial court's calculation of fair market values. *Alkmeon Naviera, S.A. v. M/V "Marina L",* 633 F.2d 789 (9th Cir.1980). Here, appellants merely disputed the final figures without support in the record. Accordingly, the district court's valuation of the Owen Childress is affirmed.

■ The district court also awarded Inland Tugs reasonable attorney fees. A prevailing litigant is not entitled to such fees unless countervailing circumstances are present justifying the award. *Alyeska Pipeline Serv. v. Wilderness Soc.,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Vaughan v. Atkinson,* 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962). Equity principles applicable in admiralty, *Noritake Co., Inc. v. M/V Hellenic Champion,* 627 F.2d 724 (5th Cir.1980), permit attorney fees where there is a factual finding of "callous disregard and indifference" of the party against whom the fees are allowed. Accordingly, the predicatory factual determinations having been made below, the award of attorney fees is affirmed. *See Gradmann & Holler GMBH v. Continental Lines, S.A., supra.*

■ Finally, the Ohio River argues that the award of prejudgment interest was error. The general rule in admiralty is that prejudgment interest is available except where there are equitable considerations

which make the award unconscionable. *No-ritake Co. v. M/V Hellenic Champion, supra.* The test is strict and it has been held that even the existence of *shared* fault is not sufficient to bar the award. *Alkmeon Naviera, S.A. v. M/V "Marina L", supra.* Ohio River has failed to demonstrate clear error and the record evidences the propriety of the award. Consequently, the allowance of prejudgment interest must also be affirmed.

The judgment of the district court is AFFIRMED.